# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-1656

_____

Tom Lundeen, individually;          *
Nanette Lundeen, individually, and  *
Tom Lundeen and Nanette Lundeen     *
on behalf of, and as parents and    *
natural guardians of M.L., a minor, *
and Michael Lundeen,                *
                                    *
              Appellants,           *
                                    *
      v.                            *
                                    *
Canadian Pacific Railway Company;   *
Canadian Pacific Limited; Canadian  *
Pacific Railway Limited; Soo Line   *
Railroad Company,                   *   Appeals from the United States
                                    *   District Court for the
              Appellees,            *   District of Minnesota.
                                    *
United States,                      *
                                    *
              Intervenor.           *
_____             *
                                    *
State of North Dakota; State of     *
Mississippi; State of Indiana;      *
State of Iowa; State of Maryland;   *
State of Minnesota; State of        *
Missouri; State of Montana;         *
State of Nevada; State of Oklahoma; *
State of South Dakota; State of     *
New Hampshire; State of Utah,       *
                                    *

Amici Curiae on behalf                 *
of Appellants.                         *
_____

No. 07-1670
_____

Rebecca Behnkie, individually,         *
and Rebecca Behnkie on behalf of,      *
and as parent and natural guardian     *
of Nathaniel Behnkie, a minor,         *
                                       *
          Appellant,                   *
                                       *
     v.                                *
                                       *
Canadian Pacific Railway Company;      *
Canadian Pacific Limited; Canadian     *
Pacific Railway Limited; Soo Line      *
Railroad Company,                      *
                                       *
          Appellees,                   *
                                       *
United States,                         *
                                       *
          Intervenor.                  *
_____                *
                                       *
State of North Dakota; State of        *
Mississippi; State of Indiana;         *
State of Iowa; State of Maryland;      *
State of Minnesota; State of           *
Missouri; State of Montana;            *
State of Nevada; State of Oklahoma;    *
State of South Dakota; State of        *
New Hampshire; State of Utah,          *
                                       *

Amici Curiae on behalf            *
of Appellants.                    *

_____

No. 07-1672

_____

Larry Crabbe; Carol Crabbe,        *
                                   *
        Appellants,                *
                                   *
    v.                             *
                                   *
Canadian Pacific Railway Company;  *
Canadian Pacific Limited; Canadian *
Pacific Railway Limited; Soo Line  *
Railroad Company,                  *
                                   *
        Appellees,                 *
                                   *
United States,                     *
                                   *
        Intervenor.                *
_____            *
                                   *
State of North Dakota; State of    *
Mississippi; State of Indiana;     *
State of Iowa; State of Maryland;  *
State of Minnesota; State of       *
Missouri; State of Montana;        *
State of Nevada; State of Oklahoma;*
State of South Dakota; State of    *
New Hampshire; State of Utah,      *
                                   *
        Amici Curiae on behalf     *
        of Appellants.             *

_____

No. 07-1676

_____

Denise Duchsherer; Leo Duchsherer;　　\*
　　　　　　　　　　　　　　　　　　　\*
　　　　　　　　　　　　　　　　　　　\*
　　　　　Appellants,　　　　　　　　　\*
　　　　　　　　　　　　　　　　　　　\*
　　　v.　　　　　　　　　　　　　　　\*
　　　　　　　　　　　　　　　　　　　\*
Canadian Pacific Railway Company;　　\*
Canadian Pacific Limited; Canadian　　\*
Pacific Railway Limited; Soo Line　　　\*
Railroad Company,　　　　　　　　　　\*
　　　　　　　　　　　　　　　　　　　\*
　　　　　Appellees,　　　　　　　　　\*
　　　　　　　　　　　　　　　　　　　\*
United States,　　　　　　　　　　　　\*
　　　　　　　　　　　　　　　　　　　\*
　　　　　Intervenor.　　　　　　　　　\*
_____　　　　　　\*
　　　　　　　　　　　　　　　　　　　\*
State of North Dakota; State of　　　　\*
Mississippi; State of Indiana;　　　　　\*
State of Iowa; State of Maryland;　　　\*
State of Minnesota; State of　　　　　　\*
Missouri; State of Montana;　　　　　　\*
State of Nevada; State of Oklahoma;　\*
State of South Dakota; State of　　　　\*
New Hampshire; State of Utah,　　　　\*
　　　　　　　　　　　　　　　　　　　\*
　　　　　Amici Curiae on behalf　　　\*
　　　　　of Appellants.　　　　　　　\*

_____

No. 07-1679

_____

| | |
|---|---|
| Jo Ann Flick, | * |
| | * |
| Appellant, | * |
| | * |
| v. | * |
| | * |
| Canadian Pacific Railway Company; | * |
| Canadian Pacific Limited; Canadian | * |
| Pacific Railway Limited; Soo Line | * |
| Railroad Company, | * |
| | * |
| Appellees, | * |
| | * |
| United States, | * |
| | * |
| Intervenor. | * |
| _____ | * |
| | * |
| State of North Dakota; State of | * |
| Mississippi; State of Indiana; | * |
| State of Iowa; State of Maryland; | * |
| State of Minnesota; State of | * |
| Missouri; State of Montana; | * |
| State of Nevada; State of Oklahoma; | * |
| State of South Dakota; State of | * |
| New Hampshire; State of Utah, | * |
| | * |
| Amici Curiae on behalf | * |
| of Appellants. | * |

-5-

_____

No. 07-1680

_____

Leo Gleason,                              *
                                          *
              Appellant,                  *
                                          *
       v.                                 *
                                          *
Canadian Pacific Railway Company;         *
Canadian Pacific Limited; Canadian        *
Pacific Railway Limited; Soo Line         *
Railroad Company,                         *
                                          *
              Appellees,                  *
                                          *
United States,                            *
                                          *
              Intervenor.                 *
_____               *
                                          *
State of North Dakota; State of           *
Mississippi; State of Indiana;            *
State of Iowa; State of Maryland;         *
State of Minnesota; State of              *
Missouri; State of Montana;               *
State of Nevada; State of Oklahoma;       *
State of South Dakota; State of           *
New Hampshire; State of Utah,             *
                                          *
              Amici Curiae on behalf      *
              of Appellants.              *

-6-

———————

No. 07-1684

———————

Mary Beth Gross, individually, and       *
Mary Beth Gross on behalf of, and       *
as parent and natural guardian of       *
Brett Gross, a minor,       *
      *
         Appellant,       *
      *
      v.       *
      *
Canadian Pacific Railway Company;       *
Canadian Pacific Limited; Canadian       *
Pacific Railway Limited; Soo Line       *
Railroad Company,       *
      *
         Appellees,       *
      *
United States,       *
      *
         Intervenor.       *
———————————————       *
      *
State of North Dakota; State of       *
Mississippi; State of Indiana;       *
State of Iowa; State of Maryland;       *
State of Minnesota; State of       *
Missouri; State of Montana;       *
State of Nevada; State of Oklahoma;       *
State of South Dakota; State of       *
New Hampshire; State of Utah,       *
      *
         Amici Curiae on behalf       *
         of Appellants.       *

_____

No. 07-1693

_____

| | |
|---|---|
| Bobby Smith; Mary Smith, | * |
| | * |
| Appellants, | * |
| | * |
| v. | * |
| | * |
| Canadian Pacific Railway Company; | * |
| Canadian Pacific Limited; Canadian | * |
| Pacific Railway Limited; Soo Line | * |
| Railroad Company, | * |
| | * |
| Appellees, | * |
| | * |
| United States, | * |
| | * |
| Intervenor. | * |
| _____ | * |
| | * |
| State of North Dakota; State of | * |
| Mississippi; State of Indiana; | * |
| State of Iowa; State of Maryland; | * |
| State of Minnesota; State of | * |
| Missouri; State of Montana; | * |
| State of Nevada; State of Oklahoma; | * |
| State of South Dakota; State of | * |
| New Hampshire; State of Utah, | * |
| | * |
| Amici Curiae on behalf | * |
| of Appellants. | * |

_____

No. 07-1694
_____

Rachelle Todosichuk,          \*

                                \*

          Appellant,     \*

                                \*

        v.                  \*

                                \*

Canadian Pacific Railway Company; \*
Canadian Pacific Limited; Canadian  \*
Pacific Railway Limited; Soo Line   \*
Railroad Company,              \*

                                \*

          Appellees,     \*

                                \*

United States,              \*

                                \*

          Intervenor.    \*

_____      \*

                                \*

State of North Dakota; State of    \*
Mississippi; State of Indiana;     \*
State of Iowa; State of Maryland;   \*
State of Minnesota; State of       \*
Missouri; State of Montana;       \*
State of Nevada; State of Oklahoma; \*
State of South Dakota; State of    \*
New Hampshire; State of Utah,    \*

                                \*

          Amici Curiae on behalf  \*
          of Appellants.         \*

_____

No. 07-1698

_____

Melissa Todd,                                              *
                                                           *
          Appellant,                                       *
                                                           *
     v.                                                    *
                                                           *
Canadian Pacific Railway Company;                          *
Canadian Pacific Limited; Canadian                         *
Pacific Railway Limited; Soo Line                          *
Railroad Company,                                          *
                                                           *
          Appellees,                                       *
                                                           *
United States,                                             *
                                                           *
          Intervenor.                                      *
_____                               *
                                                           *
State of North Dakota; State of                            *
Mississippi; State of Indiana;                             *
State of Iowa; State of Maryland;                          *
State of Minnesota; State of                               *
Missouri; State of Montana;                                *
State of Nevada; State of Oklahoma;                        *
State of South Dakota; State of                            *
New Hampshire; State of Utah,                              *
                                                           *
          Amici Curiae on behalf                           *
          of Appellants.                                   *

-10-

_____

No. 07-1699
_____

Ray Lakoduk,                                    *
                                                *
                    Appellant,                  *
                                                *
          v.                                    *
                                                *
Canadian Pacific Railway Company;               *
Canadian Pacific Limited; Canadian              *
Pacific Railway Limited; Soo Line               *
Railroad Company,                               *
                                                *
                    Appellees,                  *
                                                *
United States,                                  *
                                                *
                    Intervenor.                 *
_____                         *
                                                *
State of North Dakota; State of                 *
Mississippi; State of Indiana;                  *
State of Iowa; State of Maryland;               *
State of Minnesota; State of                    *
Missouri; State of Montana;                     *
State of Nevada; State of Oklahoma;             *
State of South Dakota; State of                 *
New Hampshire; State of Utah,                   *
                                                *
                    Amici Curiae on behalf      *
                    of Appellants.              *

-11-

_____

No. 07-1707

_____

Mark Nisbet; Sandra Nisbet,         *
           *

       Appellants,         *
           *

      v.         *
           *

Canadian Pacific Railway Company;  *
Canadian Pacific Limited; Canadian  *
Pacific Railway Limited; Soo Line  *
Railroad Company,         *
           *

       Appellees,         *
           *

United States,         *
           *

       Intervenor.         *
_____         *
           *

State of North Dakota; State of   *
Mississippi; State of Indiana;    *
State of Iowa; State of Maryland;   *
State of Minnesota; State of     *
Missouri; State of Montana;     *
State of Nevada; State of Oklahoma;  *
State of South Dakota; State of   *
New Hampshire; State of Utah,    *
           *

       Amici Curiae on behalf   *
       of Appellants.       *

Submitted: January 17, 2008
Filed: July 2, 2008

_____

Before BYE, BEAM, and SMITH, Circuit Judges.
_____

BYE, Circuit Judge.

In Lundeen v. Canadian Pacific Railway Co., 447 F.3d 606, 615 (8th Cir. 2006) (Lundeen I), we determined the above-captioned lawsuits, initially filed in state court, were preempted by 49 U.S.C. § 20106 of the Federal Railroad Safety Act (FRSA). On remand, the district court dismissed the lawsuits. The Lundeens and other appellants (hereinafter the Lundeens) thereafter filed the instant appeals. While these appeals were pending, Congress amended § 20106. The amendment directly addresses the preemptive effect of § 20106, and if applicable here, would allow these cases to proceed in state court. Canadian Pacific Railway Company (CP) challenges the amendment on several constitutional grounds. We conclude the amendment is constitutional, and therefore vacate Lundeen I and remand these cases to the district court with directions to further remand them to state court.

I

On January 18, 2002, a CP freight train derailed near Minot, North Dakota, and caused the release of more than 220,000 gallons of anhydrous ammonia into the air, exposing the area's population to a cloud of toxic gas, causing many people to suffer from permanent respiratory disease and eye damage. Many of the injured people filed a class action suit in North Dakota federal district court. Some, however, retained individual counsel and filed suit in Minnesota state court. These consolidated appeals involve a group of the individual lawsuits filed in Minnesota state court.

-13-

The class action venued in North Dakota federal district court was ultimately dismissed on the pleadings upon the district court concluding the claims were preempted by § 20106. See Mehl v. Canadian Pac. Ry. Ltd., 417 F. Supp. 2d 1104, 1116-18 (D.N.D. 2006). The claims in Minnesota were resolved less consistently, with some being settled, some being resolved in favor of CP on the preemption issue, and still others being resolved against CP on the preemption issue and proceeding in state court.

CP removed a discrete group of the Minnesota cases – those brought by the Lundeens – to Minnesota federal district court. The district court determined the Lundeens' original complaints alleged a federal cause of action by making a reference to "United States law," creating federal question jurisdiction and making removal to federal court proper. See Lundeen v. Canadian Pac. Ry. Co., 342 F. Supp. 2d 826, 829-31 (D. Minn. 2004). Subsequent to such ruling, however, the district court allowed the Lundeens to amend their complaints to delete the reference to "United States law," thereby dropping the federal claim and erasing the basis for federal question jurisdiction. After allowing the complaints to be amended, the district court concluded the cases should be remanded to Minnesota state court. Lundeen v. Canadian Pac. Ry. Co., 2005 WL 563111 at *1 (D. Minn. March 9, 2005).

CP appealed the ruling to this appellate court. We decided federal question jurisdiction was present based upon another ground, that is, preemption under § 20106. Lundeen I, 447 F.3d at 615. The cases were thereafter remanded to district court in which the court held federal preemption doomed the Lundeen cases not only on the question of federal versus state jurisdiction, but also on the merits. The district court therefore entered dismissal orders. See Lundeen v. Canadian Pac. Ry. Co., 507 F. Supp. 2d 1006, 1017 (D. Minn. 2007). The Lundeens filed the present appeals challenging such decision.

In the meantime, the Minot derailment cases were causing a stir on the political front. While the present appeals were pending, Congress passed and President Bush signed into law an amendment to § 20106. The amendment provides in relevant part as follows:

> (b) Clarification regarding State law causes of action. – (1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party–
>
>> (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;
>>
>> (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or
>>
>> (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

49 U.S.C. § 20106(b). This "clarifying" amendment reflected Congress's disagreement with the manner in which the courts, including our own in Lundeen I, had interpreted § 20106 to preempt state law causes of action whenever a federal regulation covered the same subject matter as the allegations of negligence in a state court lawsuit. Congress made the amendment retroactive to January 18, 2002, the day of the Minot derailment. See id. at § 20106(b)(2) ("This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002."). In addition, Congress expressly stated § 20106 was not intended to confer federal question jurisdiction upon the federal courts when a party filed a state court lawsuit, as the Lundeens had done. See id. at § 20106(c) ("Nothing

-15-

in this section creates a Federal cause of action on behalf of an injured party or confers Federal question jurisdiction for such State law causes of action."). Therefore, if valid, subsection (c) of § 20106 effectively overrules our decision in Lundeen I.

After the Congressional amendment, we requested from the parties supplemental briefing addressing the impact of the amendment on these consolidated appeals. CP's supplemental brief contends the amendment should be struck down as unconstitutional because it violates the separation of powers doctrine, CP's due process rights, CP's equal protection rights, and the Ex Post Facto clause.

The Lundeens contend Congress acted within its power in amending § 20106, and we must now enforce it by vacating Lundeen I and sending these cases back to state court. The Lundeens further contend the amended statute does not violate any of CP's constitutional rights. An amicus brief filed by the North Dakota attorney general on behalf of several states supports the amendment and its recognition of traditional state court jurisdiction. In addition, the United States intervened and filed a brief defending the constitutionality of the amendment.

II

We review constitutional claims de novo. Unites States v. Finck, 407 F.3d 908, 916 (8th Cir. 2005).

CP first contends the amendment to § 20106 violates the separation of powers doctrine. We respectfully disagree.

> Congress, of course, has the power to amend a statute that it believes [the courts] have misconstrued. It may even, within broad constitutional bounds, make such a change retroactive and thereby undo what it perceives to be the undesirable past consequences of a misinterpretation of its work product. No such change, however, has the force of law

-16-

unless it is implemented through legislation. Even when Congress intends to supersede a rule of law embodied in one of our decisions with what it views as a better rule established in earlier decisions, its intent to reach conduct preceding the "corrective" amendment must clearly appear.

Rivers v. Roadway Exp., Inc., 511 U.S. 298, 313 (1994).


In Plaut v. Spendthrift Farm, 514 U.S. 211 (1995), the Supreme Court reiterated Congress possesses the power to amend existing law even if the amendment affects the outcome of pending cases. Id. at 218. The Court explained the separation of powers doctrine is violated only when Congress tries to apply new law to cases which have already reached a final judgment. See id. at 226 ("Congress can always revise the judgments of Article III courts in one sense: When a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly.").


The amendment to § 20106 was a valid exercise of Congressional power, as it was implemented through the legislative process. In addition, Congress made clear its intent to reach conduct preceding the corrective amendment by expressly indicating it applied "to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002." 49 U.S.C. § 20106(b)(2). Furthermore, applying the amendment to the cases now before us does not violate the separation of powers doctrine because when the amendment became effective these cases were on appeal and had not reached final judgments. Finally, we reject CP's argument about Congress's reference to the amendment as a "[c]larification" of existing law rather than a substantive change to existing law somehow alters our analysis. We are obliged to apply the amendment to pending cases regardless of the label Congress attached to it. See Porter v. Comm'r of Internal Revenue, 856 F.2d 1205, 1209 (8th Cir. 1988) ("Our objective in interpreting a federal statute is to achieve the intent of Congress."). The

statute's clear language indicates state law causes of action are no longer preempted under § 20106.

CP next contends the amendment to § 20106 violates its due process rights because the amendment's effective date (the day of the Minot derailment) indicates Congress specifically targeted CP and upset its settled expectations about the state of the law governing its business activities.

We review legislation regulating economic and business affairs under a "highly deferential rational basis" standard of review. Koster v. City of Davenport, Iowa, 183 F.3d 762, 768 (8th Cir. 1999). "[L]egislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and . . . the burden is on the one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." Usery v. Tuner Elkhorn Mining Co., 428 U.S. 1, 15 (1976). Even retroactive legislation passes due process scrutiny so long as Congress had "a legitimate legislative purpose [that it] furthered by rational means." Gen. Motors Corp. v. Romein, 503 U.S. 181, 191 (1992); see also United States v. Ne. Pharm. & Chem. Co., Inc., 810 F.2d 726, 733-34 (8th Cir. 1986) ("Due process is satisfied simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose."). To prevail on its due process claim, CP has the burden of showing there is no "reasonably conceivable state of facts that could provide a rational basis" for the law. FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993).

CP has not satisfied its heavy burden of showing the amendment violates its due process rights. The purpose of the amendment is to give railroad accident victims the right to seek recovery in state courts when they allege railroads violate safety standards imposed by a railroad's own rules, certain state laws, or federal regulations. This easily qualifies as a rational legislative purpose for the amendment. Contrary to CP's claim that the amendment seeks "to impose unlimited liability [upon CP] for" the

-18-

Minot derailment case, CP's Brief at 49, the amendment merely gives injured parties the *chance* to seek recovery against railroads. Victims of railroad accidents must still prove their cases in court. Prior to the amendment, § 20106 had been interpreted in such a way that an injured person was denied the mere chance to hold a railroad accountable when its negligence not only violated state common law standards, but the very federal laws and regulations approved by Congress in an effort to further railroad safety. It was rational for Congress to "clarify" this result was not an intended purpose of § 20106 prior to the amendment. Indeed, the very act of enacting a retroactive statute "to correct the unexpected results of [a judicial] opinion" qualifies as a legitimate legislative purpose which survives scrutiny under the deferential rational basis standard of review. Romein, 503 U.S. at 191 (upholding retroactive legislation against a due process challenge where the legislation was passed to overturn a particular Michigan Supreme Court opinion interpreting a workers' compensation statute).

CP contends Congress acted arbitrarily and capriciously by making the amendment retroactive to January 18, 2002, the very date of the Minot derailment cases, because by doing so Congress singled out one accident and one railroad (CP). This argument misses the mark on both the facts and the law. Factually, the amendment does not single out one accident and one railroad: it applies to "*all* pending State law causes of action arising from events or activities occurring on or after January 18, 2002." 49 U.S.C. § 20106 (b)(2) (emphasis added). From a legal standpoint, however, even assuming Congress meant to target one particular event or specific pending litigation, it could do so without violating the constitution so long as it had a rational basis for doing so. See Plaut, 514 U.S. at 239 n.9 ("Congress may legislate 'a legitimate class of one'" when it has a rational basis for doing so) (quoting Nixon v. Adm'r of Gen. Servs., 433 U.S. 425, 472 (1977)); see also Robertson v. Seattle Audobon Soc'y, 503 U.S. 429, 433 (1992) (rejecting a constitutional challenge to a statute known as the Northwestern Timber Compromise, which Congress passed to resolve two specific pending lawsuits between environmentalists and the logging

-19-

industry). Congress can rationally decide to pick an effective date for legislation which will address the particular event which attracted its attention. See Williamson v. Lee Optical, 348 U.S. 483, 489 (1955) (recognizing legislative "reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind"); see also Pension Benefit Guar. Corp. v. R.A. Gray & Co., 467 U.S. 717, 731 (1984) (refusing to second-guess the balance of benefits and harms struck by Congress in selecting a statute's effective date, noting "the enactment of retroactive statutes confined to short and limited periods required by the practicalities of producing national legislation . . . is a customary congressional practice").

CP also contends the amendment violates its equal protection rights because it imposes different standards of accountability on railroads depending on whether they caused harm before or after January 18, 2002, the amendment's effective date. Unless a statute creates a suspect classification or impinges upon fundamental rights – and this one does neither – it must "be upheld against equal protection attack if it is rationally related to the achievement of legitimate governmental ends." G.D. Searle & Co. v. Cohn, 455 U.S. 404, 408 (1982).

In addressing CP's due process claim, we already explained Congress had legitimate legislative purposes for adopting the amendment and acted rationally in doing so. As a consequence, CP's equal protection argument fails. Moreover, we note CP's equal protection claim is nothing more than an attack on the amendment's effective date. Every retroactive statute, by necessity, imposes different standards on parties affected by the statute, and those differences are directly tied to the statute's effective date. Thus, if we gave credence to CP's equal protection claim we would in essence be holding Congress violates the equal protection clause every time it passes retroactive legislation.

Finally, CP argues the amendment violates the Ex Post Facto clause. The Ex Post Facto clause prohibits "enacting laws that increase punishment for criminal acts after they have been committed." Doe v. Miller, 405 F.3d 700, 718 (8th Cir. 2005). It applies only in the criminal context. See, e.g., E. Enters. v. Apfel, 524 U.S. 498, 538 (1998) ("Since Calder v. Bull, 3 Dall. 386, 1 L.Ed. 648 (1798), this Court has considered the *Ex Post Facto* Clause to apply only in the criminal context.") (Thomas, J., concurring). While a civil statute may be "so punitive either in purpose or effect [as to implicate the Ex Post Facto clause], only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." Smith v. Doe, 538 U.S. 84, 92 (2003) (internal citations and quotations omitted).

There is no proof, let alone clear proof, Congress intended the amendment to § 20106 as a criminal penalty. The statute affects negligence actions brought by injured parties against railroads. Such actions are inherently civil in nature. The Ex Post Facto clause has no application here.

III

Congress did not violate the Constitution when it amended § 20106. As a consequence, we vacate our decision in Lundeen I and remand these cases to the district court with instructions in turn to further remand them to state court.

BEAM, Circuit Judge, dissenting.

This appeal presents the question of whether recent amendments to the Federal Railroad Safety Act (amended version hereinafter referred to as "FRSA II"), initially adopted in 1970 as 49 U.S.C. § 20106 (original 1970 version hereinafter referred to as "FRSA I"), change the preemptive and retroactive effect of the law and, if so, to what extent? Respectfully, I believe that the court, speaking through the panel

-21-

majority, misconceives the substance and applicability of Congress's amendments and unconstitutionally uses the amended statute to repeal and vacate a final order of this court that fully and finally grants Canadian Pacific (CP) vested property, procedural and jurisdictional rights. Accordingly, I dissent.

The underlying facts and legal issues are set forth in some detail in Lundeen v. Canadian Pacific Railway Co., 447 F.3d 606 (8th Cir. 2006), cert. denied, 127 S. Ct. 1149 (2007) (Lundeen I), and, in a limited, but incomplete, way in the majority's opinion. Thus, I further outline the extant procedural and chronological circumstances of this case only as necessary to present a full understanding of this dispute, its history and its ramifications.

## BACKGROUND

Subsequent to the Minot, North Dakota, derailment mentioned by the court, the Lundeens,[1] citizens of North Dakota, filed a common law negligence action in Minnesota state court against CP, a citizen of Minnesota. In support of their state common law claim, the Lundeens' initial complaint made a minimal reference in paragraph V to duties arising under the "Federal Railroad Administration" (FRA) regulations and very briefly alleged in count seven "breaches of statutory rules and regulations including, but not limited to, violations of FRA rules and regulations, violations of the Code of Federal Regulations, . . . and other applicable state or federal law or administrative regulatory agencies of the States of North Dakota and Minnesota and the United States government." Complaint at 2, 18-19, Lundeen v. Canadian Pac. Ry. Co., No. 04-3220 (Dist. Ct. of Minn., Fourth Judicial Dist., Hennepin County, June 28, 2004). The initial complaint asserted, in counts one through six, id. at 14-18, common law claims of "negligence, gross negligence, carelessness, recklessness and

---

[1]Herein, "the Lundeens" refers to all plaintiffs consolidated under the lead case, 07-1656, who remain as parties as of the date of this opinion.

willful, wanton, intentional and deliberate acts and omissions." Id. at 14. These state claims were accompanied by several specific allegations of negligent and willful acts, but none of these allegations assert a direct violation of a federal statute, order or regulation or seek damages directly resulting from such violation.

This pleading, which garnered a forum shopping objection by CP, was obviously designed to accomplish Minnesota state court adjudication of state common law claims.[2] Indeed, the Lundeens carefully attempted to avoid stating what they believed to be a federal claim or inadvertently asserting a federal cause of action under the terms of Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing, 545 U.S. 308 (2005) and its precursor case Merrell Dow Pharmaceuticals, Inc. v. Thompson, 478 U.S. 804 (1986) (federal jurisdiction lies over state court claims that implicate significant federal issues). For instance, in response to CP's removal notice, the Lundeens argued that their citations to "'United States law' pertain[ed] [only] to federal maintenance and repair regulations [presumably FRSA regulations] that [CP] violated, causing the train to derail and spill ammonia in *violation of state environmental laws*." Lundeen v. Canadian Pac. Ry. Co., 342 F. Supp. 2d 826, 830 (D. Minn. 2004) (emphasis added).

Nonetheless, CP, pursuant to 28 U.S.C. § 1441(a) and (b), filed a timely notice of removal of the action to the United States District Court for the District of Minnesota, alleging federal court jurisdiction based upon the "arising under" explications found in 28 U.S.C. § 1331. The Lundeens gamely sought remand of the case to state court, arguing that no section 1331 claims were alleged in their

---

[2]The Minnesota court determined in similar cases proceeding from the January 18, 2002, derailment, that under the applicable choice-of-law provisions, the substantive law of North Dakota applied. In re Soo Line R.R. Co. Derailment of January 18, 2002, No. MC 04-007726, 2006 WL 1153359 (Apr. 24, 2006). That determination is applicable here. While there are also federal law issues at work in this matter, this ruling is clearly correct with regard to any purely state law claims.

complaint. But, employing the venerable "well-pleaded complaint rule" established by Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987), United States District Judge Richard Kyle disagreed and denied the motion to remand. Judge Kyle found that the face of the complaint "states a federal question," specifically noting that "[t]he Complaint alleges that '[CP] *violated applicable state law . . . as well as United States law*.'" Lundeen, 342 F. Supp. 2d at 829 (third alteration and emphasis in original).

The Lundeens did not appeal this ruling. Rather, in response to the district court's determination, the Lundeens moved to amend their complaint to delete *all* references to United States law. Judge Kyle, over CP's objection, granted the motion.

Thereafter, the Lundeens filed an amended complaint in which all reference to federal duties was deleted. With that, they renewed their motion to remand their claims to state court. The district court determined that it could see no federal jurisdiction established by the amended complaint and ordered a remand, refusing to invoke its discretionary federal supplemental jurisdiction over state claims under 28 U.S.C. § 1367, citing as bases Carnegie-Mellon University v. Cohill, 484 U.S. 343, 348 (1988) (remand is appropriate when all federal claims have been dropped and only state law claims remain), and 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it had original jurisdiction). This remand judgment "'put[] the litigants . . . "effectively out of [federal] court" and [was] therefore a final order appealable under 28 U.S.C. § 1291.'" Lindsey v. Dillard's, Inc., 306 F.3d 596, 599 (8th Cir. 2002) (quoting St. John v. Int'l Ass'n of Machinists & Aerospace Workers, 139 F.3d 1214, 1217 (8th Cir. 1998)). CP appealed (Lundeen I).

While 28 U.S.C. § 1447(c) and (d) preclude appeal of a remand based upon lack of subject matter jurisdiction, orders "made under § 1367(c)," as here, are reviewable by the court of appeals. Lindsey, 306 F.3d at 599. This is because such remands are discretionary under 28 U.S.C. § 1367(c), and are not deemed to be actions based upon

"lack of subject matter jurisdiction." Id. In this regard, the Supreme Court has declined (or at least has stated that it has never passed on the issue) to find that a Cohill remand is subject matter jurisdictional for the appeal- limiting purposes of sections 1447(c) and (d). Powerex Corp. v. Reliant Energy Servs., Inc., 127 S. Ct. 2411, 2419 n.4 (2007). Accordingly, this panel considered CP's claim of federal jurisdiction. Lundeen I, 447 F.3d at 611.

On appeal, the Lundeens continued to contend that the amended complaint asserted only a state common law claim, that there was no private federal cause of action available to them, and that remand to state court was required. CP, on the other hand, argued that federal jurisdiction over the litigation was dictated by FRSA I under the "complete preemption doctrine" announced in Gaming Corp. of America v. Dorsey & Whitney, 88 F.3d 536, 543 (8th Cir. 1996).

"Complete preemption provides an exception to the well-pleaded complaint rule" and "can arise when Congress intends that a federal statute preempt a field of law so completely that state law claims are considered to be converted into federal causes of action." Id. And, "[t]he issue of whether complete preemption exists is separate from the issue of whether a private remedy is created under a federal statute." Id. at 547 (citing Caterpillar, 482 U.S. at 391 n.4).

A federal jurisdictional question presents an issue of law that is reviewed de novo, and a "district court has no discretion to remand a claim that states a federal question." Id. at 542. So, following precedent established by this circuit in Peters v. Union Pacific Railroad Co., 80 F.3d 257, 262 (8th Cir. 1996) and In re Derailment Cases, 416 F.3d 787, 793-94 (8th Cir. 2005), this panel unanimously, and correctly, determined that the federal district court had subject matter jurisdiction under the complete preemption doctrine, reversed Judge Kyle's remand order and returned the case to the federal district court for further proceedings consistent with the judgment.

Lundeen I, 447 F.3d at 614-15. The case was reassigned to Chief United States District Judge James Rosenbaum.

The Lundeens immediately sought rehearing and rehearing en banc by the court, which was denied. The mandate issued and the Lundeens petitioned the Supreme Court for a writ of certiorari, specifically contesting the circuit's complete preemption ruling and the existence of federal court jurisdiction. See Petition for Writ of Certiorari, Lundeen I, No. 06-528 (Oct. 16, 2006). The Lundeens sought a stay in district court while their Supreme Court petition was pending. On January 22, 2007, the Supreme Court denied certiorari. The district court then addressed the Lundeens' preemption and jurisdiction arguments. The Lundeens argued in the district court that whatever preemptive effect must be accorded FRSA I, the statute and its duly promulgated orders and regulations were not specifically detailed enough to substantially subsume plaintiffs' separate state common law negligence claims and, thus, did not preempt them. Lundeen v. Canadian Pac. Ry. Co., No. 04-3220, slip op. at 7-12 (D. Minn. Feb. 2, 2007). In the alternative, the Lundeens contended that their common law claims "merely parallel duties imposed by [the] federal regulation." Id. at 18. The district court noted that the Lundeens failed to provide any binding precedent supporting their "parallel claim" proposition. Id. at 19. And, further, that their claims failed under the applicable FRSA preemption standards. This holding is in line with the Lundeens' argument before this court in Lundeen I when counsel stated, "we never intended to assert a federal claim . . . if you look at the original complaint, the clear gravamen of that complaint is state law claims–negligence, personal injury and property damage–arising out of this derailment." Lundeen I, Oral Argument, Oct. 14, 2005. The district court ruled that all claims in the Lundeens' amended complaint were within the subject matter of FRSA I and completely preempted by the Act. There being no discernible federal private cause of action under FRSA I, the district court dismissed the amended complaint with prejudice on February 2, 2007. Lundeen, No. 04-3220, slip op. at 22. Thereafter, the Lundeens

noticed the current appeal.  Lundeen v. Canadian Pac. Ry. Co., No. 07-1656 (8th Cir.) (Lundeen II).

In this appeal, the Lundeens persist in arguing that "[m]ost of [their] claims are not covered, or even addressed at all, by federal requirements."  Br. of Appellants at 24, Lundeen II, (8th Cir. May 11, 2007).  They claim the district court erred in applying FRSA preemption so broadly.  The Lundeens state that because FRSA I targets only federal "law, regulation, or order," tort remedies provided by the states by way of common-law duties are actionable and not preempted, citing Bates v. Dow Agrosciences LLC, 544 U.S. 431, 443-44 (2005).

The Lundeens also assert that the preemptive scope of FRSA I should be disregarded because Congress could not have meant to bar all judicial recourse for their damage claims.  Unfortunately for them, Riegel v. Medtronic, Inc., 128 S. Ct. 999 (2008), rejects this proposition.  Riegel explains that this is often exactly what a federal preemption clause does–it bars state common law claims even without making a private federal cause of action available to an injured party.  Id. at 1009.

On August 3, 2007, while this appeal pended for nearly six months, Congress enacted, through an unrelated Conference bill, partially retroactive legislation amending FRSA I.  With this enactment, the Lundeens changed the nature of their arguments on appeal, asserting new rights and assigning new liabilities arising from FRSA II, all the while misapplying part of the language of the amended statute.  They now mainly claim that the amendments essentially eliminate the preemptive thrust of FRSA I and make this change retroactive to January 18, 2002, the date of the Minot derailment.  They seek vacation of Lundeen I and Judge Rosenbaum's order and judgment dismissing the pending action on their pleadings.  The Lundeens also seek remand of their common law negligence claims (considered in Judge Kyle's ruling) to the Minnesota state court for further proceedings.  The Lundeens' formal request in this regard comes by way of a Motion to Affirm [Judge Kyle's] March 9, 2005,

Remand Order. In essence, this motion, based upon the congressional amendments that create FRSA II, seeks a legislative reversal of the court's federal jurisdictional ruling in Lundeen I.

## DISCUSSION

**A.     The New Statute**

FRSA II reads as follows

**(a) National uniformity of regulation.–(1)** Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. **(2)** A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order–
>    **(A)** is necessary to eliminate or reduce an essentially local safety or security hazard;
>    **(B)** is not incompatible with a law, regulation, or order of the United States Government; and
>    **(C)** does not unreasonably burden interstate commerce.
**(b) Clarification regarding State law causes of action.–(1)** Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party–
>    **(A)** has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to

railroad security matters), covering the subject matter as provided in subsection (a) of this section;

**(B)** has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or

**(C)** has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

**(2)** This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002.

**(c) Jurisdiction.**–Nothing in this section creates a Federal cause of action on behalf of an injured party or confers Federal question jurisdiction for such State law causes of action.

49 U.S.C. § 20106(a)-(c) (Aug. 3, 2007). Subsection (a) of amended section 20106 is a word-for-word rendition of 49 U.S.C. § 20106 as it existed in its entirety prior to the August 3, 2007, amendments.

## B.    Preemption

The court majority, at the Lundeens' urging, sees sweeping consequences arising from FRSA II. For example, the majority says "[t]his 'clarifying' amendment," referring to new subsection (b), "reflected Congress's disagreement with the manner in which the courts, including our own Lundeen I, had interpreted [FRSA I] to preempt state law causes of action whenever a federal regulation covered the same subject matter as the allegations of negligence in a state court lawsuit." Ante at 17. Respectfully, the amendment reflects nothing of the sort. Indeed, the adoption of such an expansive and simplistic rationale over-reads subsections (b) and (c), essentially repealing subsection (a) of the amended Act and stripping federal jurisdiction from both versions of the legislation.[3]

---

[3]Adoption of the majority's overreaching conclusions would appear to strip federal appeals courts of jurisdiction to carry out their appellate duties over the administrative activities of the Secretary of Transportation and Attorney General. 49

-29-

Before the Lundeens' claims can be evaluated, a correct interpretation of the amended statute must be undertaken. Prior to proceeding, however, we are necessarily reminded of three important points. First, an elemental canon of statutory construction requires that an enactment be interpreted so as not to render one of several parts inoperative, especially a part that represents the fundamental thrust of the legislation.[4] Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana, 472 U.S. 237, 249 (1985) (citing Colautti v. Franklin, 439 U.S. 379, 392 (1979)). Second, as earlier noted, subsection (a) of FRSA II is a word-for-word reenactment of FRSA I as the statute had existed since 1970. Third, at least three panels of this court have construed the language contained in FRSA I as preempting the field of railroad safety and

_____

U.S.C. §§ 20111, 20112. Appellate review is contemplated by these enforcement provisions.

[4]There can be no real argument that the overriding purpose and legislative intent of both FRSA I and FRSA II(a), as expressed in the unambiguous language of the two statutes and as complemented by the 1970 legislative history of FRSA I, is the creation of federally imposed national uniformity of laws, regulations and orders related to railroad safety as prescribed by the Secretary of Transportation. The legislative history of the Act states:

> The committee does not believe that safety in the Nation's railroads would be advanced sufficiently by subjecting the national rail system to a variety of enforcement in 50 different judicial and administrative systems. . . . [States] will have no authority to assess and compromise penalties or *to seek State judicial action*. . . . This Committee is of the opinion that the provision that States be permitted to enforce Federal standards does not lend itself to the regulation of the railroad industry; [subject to exceptions not relevant here]. . . . With the exception of industrial or plant railroads, the railroad industry has very few local characteristics. Rather, in terms of its operation, it has a truly interstate character calling for a uniform body of regulation and enforcement. It is a national system.

H.R. Rep. No. 91-1194 at 4109-10 (1970) (emphasis added).

-30-

subsuming any state common law causes of action purporting to arise under the subject matter of this section. Peters, 80 F.3d at 262; In re Derailment Cases, 416 F.3d at 793-98; and Lundeen I, 447 F.3d at 615.

With these principles in mind, I turn to the amended statute.

Subsection (a) of FRSA II, like its earlier counterpart FRSA I, unambiguously requires national uniformity of railroad safety laws, regulations and orders. And, as noted in footnote four, the legislative history of the Act reflects Congress's overarching intent that railroad safety be the ultimate right and responsibility of the federal government and not the province of the fifty states as well as the federal government. Thus, to make operative the intent of subsection (a), subsections (b) and (c), if they pass muster under the Constitution,[5] must be read as narrowly as necessary to avoid an implied repeal of subsection (a)'s continuing and clearly stated federal railroad safety act preemptions. Indeed, it would be incongruous for Congress to reenact 49 U.S.C. § 20106(a) as the mirror image of 49 U.S.C. § 20106 only to essentially repeal it under the guise of "clarifications" set forth in section 20106(b).[6] Yet, that is exactly what the Lundeens propose and what the panel majority embraces.

To avoid this untoward result, subsection (b) must be read for what it is, a limited and focused exception to the preemptive intent of subsection (a). Significantly, subsection (b) opens doors for plaintiffs like the Lundeens. By way of subsection (b)(1), Congress has authorized the creation of a state cause of action, but

---

[5]CP contends that this entire amendatory exercise by Congress is unconstitutional, and it may well be. Applying the doctrine of constitutional avoidance, we need not answer this question because we can decide this dispute by applying the amended statute. Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 347 (1936).

[6]It is clear that the FRA agrees with this assessment. See 49 C.F.R. §§ 217.2 and 218.4.

at the same time has carefully protected the concept of federal uniformity established by subsection (a).  This cause of action is limited to allegations regarding the failure of a defendant to comply with the federal standards of care established by regulation or order issued by the Secretary of Transportation, or the failure to comply with a plan, rule or standard created pursuant to regulation or order of the Secretary.   This limited claim for damages preserves the federal uniformity demanded by the FRSA.  Accordingly, any state law cause of action permitting railroad liability based upon more expansive state-based requirements than those directly established by the Secretary's regulations, rules or orders, does not pass muster under FRSA II.[7]  In the end, states are free to enact legislatively, or, if permitted by state law, adopt by way of common law pronouncement from a state's highest court, a private damages remedy limited by the language of section 20106(b)(1).  Viewing this matter from another perspective, if the subsection (b)(1) cause of action is not limited to a remedy based wholly upon a violation of the Secretary's regulations and orders, subsection (a) of the amended Act essentially becomes a dead letter.

To protect the uniformity required by subsection (a), subsection (b)(1) imposes specific pleading standards, as Congress often does in preemption clauses.  See, e.g., Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. § 78bb(f); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit, 547 U.S. 71 (2006); see also In re NVE Corp. Sec. Litig., No. 07-2931, 2008 WL 2220428 (8th Cir. May 30, 2008) (Private Securities Litigation Reform Act requires the pleading of specific statements and particular facts).

Subsection (c) of FRSA II specifies that the amended Act does not create a federal private cause of action (a matter that has never been advanced by the Lundeens

---

[7]Subsection (a)(2)(A), (B), and (C), of course, permits a state to adopt requirements that are purely local in nature, not incompatible with federal regulations and orders such as those of the Secretary of Transportation or that do not unreasonably burden interstate commerce.  No such adoptions are in play in this appeal.

-32-

or CP) or confer federal question jurisdiction arising under the limited state law cause of action authorized by subsection (b)(1).  On the other hand, subsection (c) does not strip federal jurisdiction from any matter covered by the amended Act except for the newly created subsection (b)(1) action.  Neither does subsection (c) preclude federal diversity jurisdiction over either an original filing or a case removed under 28 U.S.C. § 1441(a) and (b).[8]

Despite the clarification at (b)(1), the Lundeens' present state causes of action are preempted.  Riegel provides guidance.  Justice Scalia, for the Riegel Court, canvasses and discusses the preemption precedent established in Cipollone v. Liggett Group, Inc., 505 U.S. 504 (1992); Medtronic, Inc. v. Lohr, 518 U.S. 470 (1996); and Bates v. Dow Agrosciences LLC, 544 U.S. 431 (2005), the seminal cases on preemption prior to Riegel.  But, Riegel is the primer from which we read.

Charles Riegel was injured when his physician attempted to install (or misinstall) a heart catheter device manufactured and marketed by Medtronic.  The device had received pre-marketing approval from the federal Food and Drug Administration (FDA) under the Medical Device Amendments of 1976 (MDA).  21 U.S.C. §§ 360c et seq.  The MDA includes an express preemption provision somewhat similar to that found in FRSA II.  It states:

> Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement–
>> (1) which is different from, or in addition to, any requirement applicable under this chapter to the device, and

---

[8]The provisions of 28 U.S.C. § 1332 clearly create federal diversity jurisdiction, including diversity removal jurisdiction, over a subsection (b) state-created remedy.  Whatever else the amendments creating FRSA II may do, they clearly do not abrogate federal diversity jurisdiction over any disputes arising under the Act, or, in fact, arising in this case.

> > (2) which relates to the safety or effectiveness of the device
> > or to any other matter included in a requirement applicable
> > to the device under this chapter. § 360k(a).
>
> The exception contained in subsection (b) [like those found in FRSA II]
> permits the FDA to exempt some state and local requirements from pre-
> emption.

Riegel, 128 S. Ct. at 1003 (quoting 21 U.S.C. § 360k). Riegel and his spouse brought suit seeking a New York state common law remedy based upon a number of causes of action including the common law tort of negligence. The district court found preemption and the Second Circuit affirmed, saying the Riegels' common law claims were pre-empted because they "would, if successful, impose state requirements that differed from, or added to" the device-specific federal requirements. Riegel v. Medtronic, Inc., 451 F.3d 104, 121 (2d Cir. 2006), aff'd, 128 S. Ct. 999 (2008). The Supreme Court granted certiorari.

Analyzing section 360k(a)'s "different from or in addition to" language, Riegel observed that

> In Lohr, five Justices concluded that common-law causes of action for negligence and strict liability do impose "requirement[s]" and would be pre-empted by federal requirements specific to a medical device. We adhere to that view. In interpreting two other statutes we have likewise held that a provision pre-empting state "requirements" pre-empted common-law duties. Bates v. Dow Agrosciences LLC, 544 U.S. 431 (2005), found common-law actions to be pre-empted by a provision of the Federal Insecticide, Fungicide, and Rodenticide Act that said certain States "'shall not impose or continue in effect *any requirements* for labeling or packaging in addition to or different from those required under this subchapter.'" Id. at 443. Cipollone v. Liggett Group, Inc., 505 U.S. 504 (1992), held common-law actions pre-empted by a provision of the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. § 1334(b) which said that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising

or promotion of any cigarettes" whose packages were labeled in accordance with federal law. See 505 U.S. at 523 (plurality opinion); id. at 548-549 (Scalia, J., concurring in judgment in part and dissenting in part).

. . . As the plurality opinion said in Cipollone, common-law liability is "premised on the existence of a legal duty," and a tort judgment therefore establishes that the defendant has violated a state-law obligation. Id. at 522. And while the common-law remedy is limited to damages, a liability award "'can be, indeed is designed to be, a potent method of governing conduct and controlling policy.'" Id. at 521.

Riegel, 128 S. Ct. at 1007-08 (some citations omitted). Affirming the Second Circuit, Riegel determined that the Riegels' state negligence action was preempted by section 360k(a) of the MDA.

I concede that the MDA as discussed in Riegel deals with a product or service different from that of the FRSA. But, for preemption analysis, any differences are immaterial–the preemption language and the regulatory requirements are analogous. For federal preemption purposes, a medical device manufactured and marketed under a regime employing specific federal safety requirements is little different from a railroad service formulated and delivered under specific federal safety regulations. Thus, Riegel provides the precedent we must apply.

Like the medical device in Riegel, the railroad service in Lundeen is entitled to be delivered free of state requirements that differ from the federal regime. And, when the amended statute is properly construed, the limited state cause of action authorized by FRSA II fits within that paradigm. So, with minor exceptions not applicable in Lundeen, all state railroad safety requirements that are in addition to or different from those established under FRSA II are preempted. Paraphrasing Justice Scalia's comment in Riegel, excluding North Dakota common law duties from the scope of FRSA II preemption scheme would make little sense. Id. at 1008.

At the bottom line, FRSA II authorizes North Dakota to provide the Lundeens a state court cause of action designed to carefully protect the uniformity demanded by subsection (a). This is so because any alleged violations of duty by CP must be based upon breaches of standards of conduct promulgated by the Secretary of Transportation by authority of subsection (a). There being no indication that any such limited remedy has yet been enacted or adopted (or that any such remedy has been pleaded even if it were to exist), the Lundeens' amended complaint is preempted by FRSA II as a matter of law. Accordingly, the district court must be affirmed and the case dismissed without prejudice to the filing of a new suit by the Lundeens if and when an FRSA II-authorized state action is created in North Dakota.

## C. Retroactivity

Overlooking a narrowed construction of FRSA II, and relying upon the efficacy of their amended complaint, the Lundeens advance a broad retroactive application of the amended law. They seem to contend, as apparently does the panel majority, that the new legislation wholly unravels Lundeen I and even breathes new life into Judge Kyle's remand order reversed by the unanimous panel. This is error.

Following the enactment of FRSA II, the Lundeens, as earlier recognized, filed in this appeal a Motion to Affirm [Judge Kyle's] March 9, 2005, Remand Order. The pleading asserts several unsupportable claims concerning retroactivity, especially a claim regarding the purported clarifications and statements in subsections (b) and (c). The motion contends that notwithstanding the language of subsection (a), subsection (b)(1), supplemented by the retroactive thrust of subsection (b)(2), provides that on and after January 18, 2002, their amended complaint totally survives FRSA I preemption. Again, this grossly misreads the legislation. The Lundeens argue that "[c]ongressional intent is the touchstone for determining the preemptive effect of a statute." Wuebker v. Wilbur-Ellis Co., 418 F.3d 883, 886 (8th Cir. 2005). I agree. However, the problem facing the Lundeens is that such intent emerges from the

statutory language and, if ambiguity exists, with the help of legislative history. Legislative intent does not spring from the wishes and hopes of a disappointed party.

The pronouncements of subsection (b)(2) do not help the Lundeens. In fact, two problems emerge for them with regard to Judge Kyle's order. First, any retroactivity announced in subsection (b)(2) refers to and runs only to causes of action enabled by and filed under authority of subsection (b)(1). Likewise, any dilution of federal jurisdiction announced in subsection (c) runs only to state law causes of action authorized by subsection (b)(1), not to North Dakota common law assertions made by the Lundeens in their amended complaint and considered when FRSA I was the law. And, it bears repeating, Congress addressed no issue of retroactivity except that found in subsection (b)(2), which by its language applies only to subsection (b).[9] Accordingly, none of the issues decided by Judge Kyle or this panel in Lundeen I are reached by the language of FRSA II.

Second, the jurisdictional finding of Lundeen I was a final judgment that cannot constitutionally be reopened or reversed by Congress or this court. Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 219 (1995). I agree with the Lundeens that constitutionally enacted legislative amendments must be applied to pending litigation. Id. at 226. But here, even assuming the constitutionality of FRSA II, that means we must apply the legislation only to the instant appeal–a review of Judge Rosenbaum's order of dismissal. Lundeen I and the prior jurisdictional rulings concerning the

---

[9]"[A] presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." Landgraf v. USI Film Prods., 511 U.S. 244, 265 (1994). We will not construe enactments to have retroactive effect unless their language requires this result. Id. at 272. Thus, we look to the clear intent of Congress, as set forth in the statutory language. Id. Requiring such expression of intent by Congress "assures that Congress itself has affirmatively considered the potential unfairness of retroactive application." Id. In this case, we do not, then, second-guess why Congress applied the retroactivity language in (b)(2) only to the state law causes of action contemplated in (b)(1).

Lundeens' amended complaint are not pending. Thus, the Lundeens miss the mark in their motion.

I recap their problem in this context. <u>Lundeen I</u> decided an issue of federal subject matter jurisdiction under FRSA I. So, as previously stated, the reference to retroactive validity of "State law causes of action" found in subsection (b)(2), neither mentions nor by implication applies to subsection (a), the portion of FRSA II in force and effect when Judge Kyle ruled and this court decided <u>Lundeen I</u>.[10] Thus, to repeat an earlier point, any retroactive language in (b)(2) neither refers to nor affects (a), only (b)(1). But, the Lundeens contend that so long as Judge Rosenbaum's judgment of dismissal is on appeal in the federal court hierarchy, Judge Kyle's remand order is likewise on appeal and open for modification and affirmance. The Lundeens supply no support for this theory, other than reliance on <u>Plaut</u>, which runs to the contrary.

<u>Lundeen I</u>'s jurisdictional judgment has been fully appealed, including a writ of certiorari to the Supreme Court, and any appeal day has long since passed. Indeed <u>Lundeen I</u> is not a "judgment[] still on appeal" in any sense contemplated by <u>Plaut</u>. <u>Plaut</u>, 514 U.S. at 226. The Lundeens mistake the Court's language in <u>Plaut</u> to apply to a pending case. But, <u>Plaut</u> speaks to the effect of newly created, retroactive law on pending judgments. <u>Plaut</u> clarifies that "the decision of an inferior court is not (*unless the time for appeal has expired* [as it has in <u>Lundeen I</u>]) the final word of the department as a whole." <u>Id.</u> at 227 (emphasis added). This means that once the time

_____

[10]<u>See, e.g.</u>, <u>Boumediene v. Bush</u>, Nos. 06-1195, 06-1196, 2008 WL 2369628, at *34 (U.S. June 12, 2008) ("'"[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."'") (quoting <u>Russello v. United States</u>, 464 U.S. 16, 23 (1983) (quoting <u>United States v. Wong Kim Bo</u>, 472 F.2d 720, 722 (5th Cir. 1972))). Here, Congress provided language mandating retroactivity in subsection (b)(2) referring directly to subsection (b)(1) but provided no language whatever concerning retroactivity of subsection (a) or any other portion of the amended statute.

for appeal has expired, the word of the last court in the hierarchy that ruled on the case is final, and not pending. Id.

Any congressional attempt to reverse Lundeen I, as suggested by the Lundeens, presents an insurmountable separation of powers problem. While not a perfect fit on the issue, Pennsylvania v. Wheeling & Belmont Bridge Co., 59 U.S. 421 (1855) (Wheeling II) is path-marking. Wheeling II determined that when pending executory rulings, such as injunctions, are at issue, subsequent congressional intent may amend such an interlocutory ruling. However, when an appealable judgment is an action at law, as here, and has been finalized under all available appeal procedures, the right to alter the judgment has "passed beyond the reach of the power of congress." Id. at 431. The Supreme Court has analyzed the separation of powers issues in similar circumstances. In Plaut, the Court held that Congress violates the fundamental principle of the separation of powers when it retroactively commands the federal courts to reopen final judgments. Plaut, 514 U.S. at 219. "'A legislature without exceeding its province cannot reverse a determination once made, in a particular case; though it may prescribe a new rule for future cases.'" Id. at 222 (quoting The Federalist No. 81, p. 545 (J. Cooke ed. 1961)).

While Judge Rosenbaum's judgment of dismissal may be on appeal, and subject to amendment and reversal by congressional enactment, this panel's unanimous judgment in Lundeen I based upon a then-valid preemption mandate, that has not been retroactively disturbed by statutory language and has been fully vetted by the court en banc and the Supreme Court, is not subject to congressional disposition. It is a final judgment that may not be upset by an inapplicable portion of subsequent legislation. The majority errs in its ruling to the contrary.[11]

_____

[11]I note, too, with an emphasis on the "need to preserve finality in judicial proceedings," that the court majority fails to discuss the authority under which we recall the mandate in Lundeen I. Sargent v. Columbia Forest Prods., Inc., 75 F.3d 86, 89 (2d Cir. 1996). The panel majority's opinion is void of any discussion concerning

## CONCLUSION

The Lundeens and the panel majority misread, misstate and misapply both the preemptive impact and the retroactive effect of the amended statute.

Accordingly, the Lundeens' Motion to Affirm [Judge Kyle's] March 9, 2005, Remand Order should be denied and Judge Rosenbaum's judgment of dismissal should be affirmed, but without prejudice.

I dissent.

_____

the exceptional circumstances needed to warrant their action. Calderon v. Thompson, 523 U.S. 538, 549-50 (1998).