Tom LUNDEEN, individually and Nanette Lundeen, individually, and Tom Lundeen and Nanette Lundeen on behalf of, and as parents and natural guardians of M.L., a minor, and Michael Lundeen, Appellants

v.

CANADIAN PACIFIC RAILWAY COMPANY, et al., Appellees.

State of New Hampshire, et al., Amici on behalf of Appellant.

United States, Intervenor.

Larry Crabbe and Carol Crabbe, Appellants

v.

Canadian Pacific Railway Company, et al., Appellees.

State of New Hampshire, et al., Amici on behalf of Appellant.

United States, Intervenor.

Denise Duchsherer and Leo Duchsherer, Appellants

Joshua Duchsherer,

v.

Canadian Pacific Railway Company, et al., Appellees.

State of New Hampshire, et al., Amici on behalf of Appellant.

United States, Intervenor.

Jo Ann Flick, Appellant

v.

Canadian Pacific Railway Company, et al., Appellees.

State of New Hampshire, et al., Amici on behalf of Appellant.

United States, Intervenor.

Leo Gleason, Appellant

v.

Canadian Pacific Railway Company, et al., Appellees.

State of New Hampshire, et al., Amici on behalf of Appellant.

United States, Intervenor.

Mary Beth Gross, individually, and Mary Beth Gross on behalf of, and as parent and natural guardian of Brett Gross, a minor, Appellant

v.

Canadian Pacific Railway Company, et al., Appellees.

State of New Hampshire, et al., Amici
on behalf of Appellant.

United States, Intervenor.

Bobby Smith and Mary
Smith, Appellants

v.

Canadian Pacific Railway Company,
et al., Appellees.

State of New Hampshire, et al., Amici
on behalf of Appellant.

United States, Intervenor.

Rachelle Todosichuk, Appellant

v.

Canadian Pacific Railway Company,
et al., Appellees.

State of Nevada, et al., Amici
on behalf of Appellant.

United States, Intervenor.

Melissa Todd, Appellant

v.

Canadian Pacific Railway Company,
et al., Appellees.

State of New Hampshire, et al., Amici
on behalf of Appellant.

United States, Intervenor.

Ray Lakoduk, Appellant

v.

Canadian Pacific Railway Company,
et al., Appellees.

State of New Hampshire, et al., Amici
on behalf of Appellant.

United States, Intervenor.

Mark Nisbet and Sandra
Nisbet, Appellants

v.

Canadian Pacific Railway Company,
et al., Appellees.

State of New Hampshire, et al., Amici
on behalf of Appellant.

United States, Intervenor.

Nos. 07–1656, 07–1672, 07–1676, 07–1679,
07–1680, 07–1684, 07–1693, 07–1694,
07–1698, 07–1699, 07–1707.

United States Court of Appeals,
Eighth Circuit.

Oct. 10, 2008.

Kristy L. Albrecht, argued (Sarah Andrews Herman and Benjamin J. Hasbrouck, on the brief), Dorsey & Whitney, Fargo, ND, for appellants.

Timothy Robert Thornton, argued (Kevin M. Decker and Jonathan P. Schmidt, on the brief), Briggs & Morgan, Minneapolis, MN; Carter G. Phillips, Sidley & Austin, Washington, DC, for appellees.

Eric Fleisig-Greene, Douglas Letter, Scott R. McIntosh, Michael E. Robinson, U.S. Department of Justice, Washington, DC, for Intervenor.

Kelly A. Ayotte, Attorney General, Concord, NH, Mark L. Shurtleff, Salt Lake City, UT, Lawrence Elton Long, Attorney General, Pierre, SD, Douglas F. Gansler, Attorney General, Baltimore, MD, W.A. Drew Edmondson, Attorney General, Oklahoma City, OK, Charles Carvell, Assistant Attorney General, Bismarck, ND, Catherine Cortez Masto, Attorney General, Carson City, NV, Mike McGrath, Attorney General, Helena, MT, Jeremiah W. (Jay) Nixon, Attorney General, Jefferson City, MO, Jim Hood, Attorney General, Jackson, MS, Lori Swanson, Attorney General, St. Paul, MN, Thomas J. Miller,

Acting Assistant Attorney General, Des Moines, IA, Steve Carter, Attorney General, Indianapolis, IN, for Amicus on behalf of Appellants.

## ORDER

BEAM, Circuit Judge, dissenting from the denial of panel rehearing and from the denial of rehearing en banc by the circuit judges of the circuit in regular active service.

The Supreme Court in *Plains Commerce Bank v. Long Family Land & Cattle Co., Inc.*, —— U.S. ——, 128 S.Ct. 2709, 171 L.Ed.2d 457 (2008), emphasizes two legal principles either overlooked or ignored by the panel majority (along with other well-established Supreme Court and circuit precedent discussed in my dissent in this appeal), which shortcomings now stand unreviewed by this court en banc. The Court states that "we bear an independent obligation to assure ourselves that jurisdiction is proper before proceeding to the merits." *Id.* at 2716 (citing *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)). The Court then reminds us that "the tribal tort [like the state common law tort asserted by the Lundeens] at issue [in *Plains Commerce Bank* ] is a form of regulation," *id.* at 2721 (citing *Riegel v. Medtronic, Inc.*, —— U.S. ——, ——, 128 S.Ct. 999, 1008, 169 L.Ed.2d 892 (2008)), a case controlling matters squarely at issue in this appeal.

## I.

First, the matter of jurisdiction. A federal appellate court always faces two separate and distinct issues of jurisdiction. It must concern itself initially with the jurisdiction of the tribunal from which the appeal emerges, here the United States District Court, and then must consider its own appellate jurisdiction. District Judge Richard Kyle, pursuant to 28 U.S.C. § 1367(c)(2) and (3), had authority under the district court's supplemental jurisdiction to enter his discretionary remand order of March 9, 2005. This is because without regard to any issues of preemption, complete or defensive, the Lundeens' initial complaint was sufficient to and did allege a cause of action asserting "arising under" jurisdiction under 28 U.S.C. § 1331 based upon *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005) and 49 U.S.C. § 20106. Neither party has disputed this conclusion. And, Judge Kyle's order denying the railroad federal court jurisdiction was a final judgment under 28 U.S.C. § 1291, which judgment was timely noticed for appeal to this court by Canadian Pacific (CP). Where a remand order effectively puts litigants out of federal court and leaves "nothing of the matter on the federal court's docket," it is appealable under 28 U.S.C. 1291. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 714, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). In CP's appeal, Judge Kyle's jurisdictional order was reversed and the case was remanded to the federal district court for further proceedings. *Lundeen v. Canadian Pac. Ry.*, 447 F.3d 606, 615 (8th Cir.2006) (*Lundeen I* ). It is noteworthy that this panel's jurisdictional ruling was denied en banc consideration and a writ of certiorari by the Supreme Court. This court issued its Federal Rule of Appellate Procedure Rule 41 mandate on this judgment on July 27, 2006.

After remand, on February 2, 2007, District Judge James Rosenbaum filed an order on the merits of Lundeens' allegations and the district court entered judgment dismissing the complaint on February 5, 2007. This, too, was a final appealable order. Lundeens' notice of appeal was addressed to "the final judgment entered

in this action on February 5, 2007." The notice did not refer to Judge Kyle's final judgment of March 9, 2005. Neither did the Lundeens in any way argue to Judge Rosenbaum that the court lacked federal subject matter jurisdiction, nor did they at any time seek a remand of the litigation to state court.

So, starting with the basics, Rule 3 of the Federal Rules of Appellate Procedure requires that Lundeens' notice of appeal "designate the judgment, order, or part thereof being appealed." Fed. R.App. P. 3(c)(1)(B). This rule is construed broadly. "[A] notice of appeal that names the final judgment is sufficient to support review of all earlier orders that merge in the final judgment under the general rule that appeal from a final judgment supports review of all earlier *interlocutory* orders." 16A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure,* § 3949.4 at 72 (3d ed.1999) (emphasis added). We will also, in certain instances, consider post-judgment motions decided after a notice of appeal has been filed, if we determine that those judgments do not affect finality for purposes of appellate jurisdiction under § 1291. *Tweedle v. State Farm Fire & Cas. Co.,* 527 F.3d 664, 669 (8th Cir.2008). Indeed, resolution of additional post-judgment orders in those circumstances will actually advance resolution of the litigation. *Id.* at 670. In this current appeal, however, we have no prior, interlocutory orders pulled up with Judge Rosenbaum's judgment, nor did Judge Rosenbaum make any post-dismissal orders that we need to address.

Thus, under Rule 3, this panel only has appellate jurisdiction to consider the merits of Judge Rosenbaum's order and judgment and has no Rule 3 appellate jurisdiction over the jurisdictional issues fully and finally litigated before Judge Kyle and fully and finally vetted on appeal by this court. Of equal importance is the fact that the reconsideration by this panel of Judge Kyle's fully reviewed § 1291 final judgment, even had it been specifically incorporated in one form or another in the notice leading to the current appeal addressing Judge Rosenbaum's final judgment, constitutes an unprecedented and erroneous duplicate appeal of the March 9, 2005, final judgment of the district court. I can find no analog among reported federal cases for this "second-bite-of-the-apple" approach the panel majority accords the Lundeens' fully litigated jurisdictional claims. *Lundeen v. Canadian Pac. Ry.,* 532 F.3d 682 (8th Cir.2008) (*Lundeen II* ).

But, the most troubling and problematic aspect of this case as it now stands is how the panel majority purports to jump the chasm between the fully completed appeal of the March 9, 2005, final judgment and the current appeal of the February 5, 2007, final judgment and gathers unto itself authority to direct the district court to remand Lundeens' purported state law cause of action to the Minnesota courts. And, the court majority makes no attempt to explain how it accomplishes this feat within the bounds of federal substantive and procedural law.

While the current appeal of Judge Rosenbaum's February 5, 2007, district court judgment pended, the 110th Congress amended 49 U.S.C. § 20106 (FRSA II) effective August 3, 2007, by adding new subsections (b) and (c). Armed with these changes, the majority simply states, without amplification, "if valid, [the new] subsection (c) of § 20106 effectively overrules our decision in [the completed appeal concerning Judge Kyle's March 9, 2005, final judgment]." *Lundeen II,* 532 F.3d at 688. Of course, the panel majority makes no effort to explain how this result occurs, either as a matter of appellate jurisdiction

or on the merits of the Lundeens' substantive claims.

In reaching its conclusions, the court majority begins (and ends) its analysis by simply sidestepping what has actually happened in this litigation. In this regard, the majority says; when a new law is retroactive, " 'an appellate court must apply that law in reviewing judgments still *on appeal* that were rendered before the law was enacted, and must alter the outcome accordingly.' " *Id.* at 689 (quoting *Plaut v. Spendthrift Farm,* 514 U.S. 211, 226, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995)) (emphasis added). But, as I have outlined, including the Rule 3 problem, the jurisdictional issue dealt with in the March 9, 2005, order is no longer in any sense "on appeal" to this panel. Thus the panel has no jurisdiction to reach back and rewrite the result reached in the appeal of Judge Kyle's final judgment. *Plaut v. Spendthrift Farm,* 514 U.S. 211, 227, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995). But, the panel opinion poses yet more onerous problems, constitutional and otherwise.

I return to the panel majority's evaluation of the effects of the amendments on the existing statute and note at the outset that, standing alone, preemption and jurisdiction are different and unrelated issues. The panel's use of the phrase "if valid" in connection with the new subsection (c), *Lundeen II,* 532 F.3d at 688, appears to refer solely to issues of constitutional validity, at least the panel majority discusses only constitutional considerations in its opinion. While I suggest that this may be an overly narrow approach by the court, as I will later explain, I nonetheless begin with the majority's above-stated contentions. Subsection (c), for our purposes says, "Nothing in this section … confers Federal question jurisdiction for *such State law causes of action.*" 49 U.S.C. § 20106(c) (emphasis added). To deter-

mine the intent of this italicized language in subsection (c), one must return to subsection (b) for an understanding of the reference to the words "such State law causes of action." Obviously this language refers to state law causes of action lately authorized by Congress on August 3, 2007, under subsection (b)(1)(A), (B), (C) and (2), which reads as follows:

(b) Clarification regarding State law causes of action.—

(1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party—

(A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;

(B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or

(C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

(2) This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002.

Congress, of course, has no authority to create state law causes of action. So, the new subsection (b)(1) simply purports to penetrate and limit the preemptive thrust of the Federal Railway Safety Act, 49 U.S.C. § 20106, as it existed prior to August 3, 2007, in state law causes of action specifically enumerated in subsection (b)(2). In sum, the preemption-stripping language in (b)(1), under the clear lan-

guage of (b)(2), applies to *"pending* [on August 3, 2007] State law causes of action arising from events or activities occurring on or after January 18, 2002"—the date of the Minot accident. 49 U.S.C. § 20106(b)(2) (emphasis added).

So, returning to the jurisdiction-stripping language of new subsection (c) referred to by the panel majority as its authority for reversing and remanding the March 9, 2005, Judge Kyle judgment, Congress purports to eliminate only "Federal question jurisdiction" for "pending [on August 3, 2007, the effective date of the amendments] State law causes of action arising from events or activities occurring on or after January 18, 2002," nothing more. 49 U.S.C. § 20106(b)(2), (c).

In this context, only the "arising from events or activities occurring on or after January 18, 2002," language in the August 3, 2007, amendments asserts any retroactive intent by Congress. No words of retroactivity address or modify "pending State law causes of action" or "[f]ederal question jurisdiction." And, the preemption—limiting mandates of (b)(1) apply to pending state law causes of action docketed in either federal or state courts. For instance, it seems certain that a (b)(1) and (2)—referenced pending state law cause of action presently docketed in federal court and qualifying under diversity jurisdiction requirements, as do the Lundeens' claims, is not preempted to any greater or lesser extent than a pending state law cause docketed in state court.

The panel majority states that "[t]his 'clarifying' amendment [subsection (b)] reflected Congress's disagreement with the manner in which [this court] had interpreted [the original] § 20106 [FRSA I] to preempt state law causes of action whenever a federal regulation covered the same subject matter as the allegations of negligence in a state court lawsuit." *Lundeen*

*II*, 532 F.3d at 688. But, this is not an accurate assessment of the amended FRSA II.

The court majority further says "Congress expressly stated [FRSA I] was not intended to confer federal question jurisdiction upon the federal courts when a party filed a state court lawsuit, as the Lundeens had done." *Id.* Of course, Congress has said no such thing.

From these statements, the panel majority, without offering a roadmap of any kind, seems to attempt to travel a circuitous, inferential, speculative and ultimately unavailing trail. The unwritten and unstated script of the panel majority appears to read as follows:

> Through subsection (b)(1) and (2) of FRSA II the 110th Congress on August 3, 2007, pierced the complete preemption veil erected by the 91st Congress on October 16, 1970, for the benefit of pending state law causes of action arising from events occurring on or after January 18, 2002. This attenuation of existing FRSA I complete preemption, supplemented by the language of subsection (c) of FRSA II, eliminated federal question and federal court jurisdiction which had been based upon the doctrine of complete preemption for those pending state law causes of action arising from occurrences or events on or after January 18, 2002. This turn of events mandates that this panel in this appeal remand the Lundeens' state law cause of action to the courts of Minnesota, from whence it came.

But, this jerry-built procedural and substantive morass falls of its own weight—for at least three reasons.

First, the amended § 20106 does not support this house of cards. *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) re-

quires that if a statute is to operate retroactively, traditional presumption teaches that it does not govern "absent clear congressional intent favoring such a result." *Id.* at 280, 114 S.Ct. 1483. There is no such clear congressional intent in FRSA II. Indeed, the majority's apparent approach is the antithesis of a result reached by traveling a clearly marked pathway. Only by indirection, inference and speculation does the panel majority reach its goal. In *Landgraf,* while that case was on appeal, as here, Congress amended § 102 of the Civil Rights Act of 1991, creating a new right to recover compensatory and punitive damages. *Id.* at 253–54, 114 S.Ct. 1483. Landgraf argued remand, as do the Lundeens, to allow for consideration of these new rights. *Id.* at 249, 114 S.Ct. 1483. The Supreme Court rejected this contention saying that retroactive consideration of newly created rights between private parties while a matter is on appeal requires explicit and unequivocal direction from Congress and the presumption against statutory retroactivity cannot be overcome by applying general canons of statutory construction or other interpretive techniques using grammatical legerdemain or inference. *Id.* at 286, 114 S.Ct. 1483.

Second, the 110th Congress's disagreement with this court's interpretation of the 91st Congress's legislative intent, if any such disagreement actually exists, is irrelevant unless the later analysis clearly and correctly interprets the earlier Congress's intent. And, that is clearly not the fact here. Initially, it is counterintuitive in the extreme to presume, as do the panel majority's statements, that the 110th Congress sitting in 2007 can accurately divine the intent of the 91st Congress acting in 1970, especially when many members of the later body were not even members of Congress or, in some instances, had not yet been born in 1970, and more especially when such newly minted intent faces rock solid legislative history to the contrary. *See* H.R.Rep. No. 91–1194 (1970), 1970 U.S.Code Cong. & Adm. News 4104, 4109–10. "[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 4 L.Ed.2d 334 (1960). This statement is even more true when it is a federal appellate court panel that seems to have discovered this earlier legislative state of mind after the passage of thirty-seven years, and without support from either legislative language or legislative history.

Third, if, as the panel majority seems to claim, FRSA II retroactively stripped the federal courts of federal court jurisdiction based on the abolition of the doctrine of complete preemption on and after January 18, 2002, then Judge Kyle, notwithstanding ample circuit and Supreme Court precedent to the contrary, had no subject matter jurisdiction over the Lundeens' original state court claim, nor did any other federal tribunal, appellate or otherwise. And, if this is true, this panel has jurisdiction only to (a) read the statutory tea leaves, (b) determine that it lacks subject matter jurisdiction and (c) dismiss the pending case. Under this scenario, this panel has no jurisdiction to reconsider a prior appeal and affirmatively order a remand to state court or to take any other judicial action of any kind.

## II.

*Plains Commerce Bank*'s reference to *Riegel v. Medtronic* reenforces the concept that state tort actions are regulatory in nature, including state tort actions relying upon federal statutes and regulations for articulation of an applicable standard of care. 128 S.Ct. at 2721.

For pending state law claims alleging a standard of care based upon FRSA II promulgated rules, regulations and orders, the panel opinion, as earlier noted, purports to strip away the preemptive mandates of subsection (a) FRSA II on and after January 18, 2002. Since matters of intent, function and applicability of each alleged federal rule, regulation or order require analysis and interpretation by the trial court and jury under the particular facts alleged, this circuit now has eight regulators of railway safety, the courts of the seven states of the circuit and the Secretary of the Department of Transportation. I respectfully believe that this turns federal uniformity requirements of subsection (a) on their head or, perhaps, posterior. I submit that the amended Act simply cannot be read to retroactively strip away statutorily mandated preemptions existing prior to the effective date of FRSA II, if ever.

Finally, in rejecting CP's due process arguments, the majority relies upon inapposite precedent and, even then, ignores well-established limitations. The panel says "[l]egislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality,'" *Lundeen II,* 532 F.3d at 689 (quoting *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 15, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976)). Using this *Usery* principle, the panel then imposes a "heavy burden" on CP to show a violation of due process rights. *Id.* at 690. Of course, the panel fails to note that *Usery* involved mostly prospective and little, if any, retroactive adjustment of private burdens and benefits. The panel cites no precedent that actually validates the retroactive creation of new private causes of action between private parties and *Landgraf,* as earlier indicated, essentially rejects such result. Indeed, in a more recent case, *Eastern Enterprises v. Apfel,* 524 U.S. 498,

118 S.Ct. 2131, 141 L.Ed.2d 451 (1998), Justice Kennedy, discussing due process jurisprudence under similar circumstances, discounts the *Usery* precedent cited by the panel majority. 524 U.S. at 547, 118 S.Ct. 2131 (J. Kennedy, concurring and dissenting). After noting that "'[r]etrospective laws are, indeed, generally unjust; and, as has been forcibly said, neither accord with sound legislation nor with the fundamental principles of the social compact,'" *id.* (quoting 2 J. Story, Commentaries on the Constitution § 1398 (5th ed. 1891)), he states that "the [Supreme] Court's due process jurisprudence reflects this distrust." *Id.* He further notes that "[e]ven though prospective economic legislation carries with it the presumption of constitutionality, '[i]t does not follow . . . that what Congress can legislative prospectively it can legislative retrospectively.'" *Id.* at 547–48, 118 S.Ct. 2131 (quoting *Usery,* 428 U.S. at 16–17, 96 S.Ct. 2882) (second and third alteration in original). Under a correct due process test, justification for prospective legislation does not suffice for retroactive acts of Congress. *Id.* at 548, 118 S.Ct. 2131. Accordingly, the panel majority falls well short in its published rationale for its rejection of CP's due process defense.

Recent forays by Congress into jurisdiction conferring and jurisdiction—stripping statutes provide support for CP's concerns. In *Hamdan v. Rumsfeld,* the Court—concedes that a statute that takes away no substantive right but simply changes the tribunal that is to hear the case is usually not fatally problematic. 548 U.S. 557, 576–77, 126 S.Ct. 2749, 165 L.Ed.2d 723 (2006), *superseded by statute* Military Commissions Act (MCA) of 2006, Pub.L. No. 109–366, 120 Stat. 2600, *as recognized in Boumediene v. Bush,* —— U.S. ——, 128 S.Ct. 2229, 171 L.Ed.2d 41 (2008). But, when jurisdiction stripping is

coupled with dissipation of substantive rights, as, for instance, when established preemption defenses are taken away from a railroad, due process protections demand a different outcome. *Boumediene v. Bush,* ——— U.S. ———, ———, 128 S.Ct. 2229, 2274, 171 L.Ed.2d 41 (2008).

### III.

Whether we deal with the panel majority's conclusions as a matter of statutory analysis or constitutional adjudication, this case raises important and troubling issues several of which are wrongly decided by the panel and are now rejected for review by the court en banc. In my view, such result portends serious consequences for this and other litigation involving America's railroads. As things now stand, the panel decision reads the "national uniformity" provisions of subsection (a) of § 20106 out of the FRSA and provides the real possibility of subjecting matters of railway safety to fifty state regulators while dangerously reducing the federal government's oversight of railway accident monitoring and prevention.

Thus, I dissent from the court's refusal to consider the important issues in this case en banc. In the absence of circuit review, it is my hope that the Supreme Court may find it appropriate to consider the untoward ramifications of this decision, assuming CP requests it do so.