Judy **GAUTHIER,** as an individual and on behalf of Larry Gauthier and his estate, et al., Plaintiffs,

v.

**UNION PACIFIC RAILROAD CO., et al., Defendants.**

**Civil Action No. 1:07CV12.**

United States District Court, E.D. Texas, Beaumont Division.

March 25, 2009.

Jason Aron Itkin, Kurt B. Arnold, Arnold & Itkin, LLP, Houston, TX, for Plaintiffs.

Douglas W. Poole, William Robert Floyd, McLeod Alexander Powel & Apffel, Galveston, TX, J. E. McElligott, Jr., Kyle L. Gideon, Davidson Meaux Sonnier & McElligott, Lafayette, LA, Hubert Oxford, III, Benckenstein & Oxford, Beaumont, TX, for Defendants.

### MEMORANDUM ORDER OVERRULING OBJECTIONS AND ADOPTING REPORT AND RECOMMENDATION ON DEFENDANTS' DISPOSITIVE MOTIONS

THAD HEARTFIELD, District Judge.

Pursuant to 28 U.S.C. § 636(b) and the Local Rules for the Eastern District of Texas, the Court referred this matter to the Honorable Keith F. Giblin, United

States Magistrate Judge, at Beaumont, Texas, for entry of findings of fact and recommended disposition on the Defendants' pending case-dispositive motions. On March 10, 2009, Judge Giblin issued his *Report and Recommendation* [Clerk's doc. # 112] on those motions. The magistrate judge entered findings of fact and conclusions of law and recommended that the Court grant four of the motions [Clerk's doc. # s 46, 47, 50, 51], deny three of the motions [Clerk's doc. # 45, 48, 80], and grant in part and deny in part one of the dispositive motions [Clerk's doc. # 49].

The Defendants objected to the magistrate judge's report and re-urged the arguments and evidence contained in their motions for summary judgment regarding federal preemption and application of Louisiana law to Plaintiffs' claims. The Defendants specifically argue that Judge Giblin erred in his application of the law on federal preemption regarding federal funding of the warning devices at the crossing in question. They also contend that the magistrate judge misapplied Louisiana law on the "dangerous trap" doctrine in this case and that their motion for summary judgment regarding their statutory duties to maintain the crossing under Louisiana law should be granted. They finally object to Judge Giblin's recommendation that the Plaintiffs be allowed to introduce evidence relating to excessive speed or inadequacy of warning devices on the locomotive as part of their general negligence claims even though the magistrate recommended that summary judgment be granted on those issues.

■ It is only incumbent upon this Court to make a *de novo* review of those portions of the magistrate judge's report and recommendation to which the Defendants specifically raised objections. *See* 28 U.S.C. § 636(b)(1)(C); Fed.R.Civ.P. 72(b). With respect to those portions of the report and recommendation to which no ob-

jections were raised, the Court need only satisfy itself that there is no plain error on the face of the record. *See Douglass v. United Serv. Auto. Ass'n,* 79 F.3d 1415, 1428–29 (5th Cir.1996) (*en banc* ).

The Court has conducted a *de novo* review of Judge Giblin's analysis on the issues presented in the motions and considered Defendants' objections regarding the same. Pursuant to the Defendants' objections and in accordance with 28 U.S.C. § 636(b)(1), the Court conducted a *de novo* review of the magistrate judge's findings, the record, the relevant evidence, the specific objections, and the applicable law in this proceeding. After review, the Court finds that Judge Giblin's findings and recommendations should be accepted. The Defendants' objections [Clerk's doc. # 113] are overruled.

Accordingly, the magistrate judge's *Report and Recommendation on Dispositive Motions* [Clerk's doc. # 112] is **ADOPTED** by this Court. The Court therefore **ORDERS** as follows:

Defendants' motion for partial summary judgment regarding the railroad's duty to maintain the crossing [Clerk's doc. # 45] is **DENIED;**

Defendants' motion for summary judgment regarding Plaintiffs' survival action [Clerk's doc. # 46] is **GRANTED;**

Defendants' motion for partial summary judgment regarding the federal preemption under the Boiler Inspection Act of claims related to the adequacy of warning devices [Clerk's doc. # 47] is **GRANTED;** subject to the Plaintiffs' introduction of certain related evidence on other negligence claims;

Defendants' motion for partial summary judgment as to the Plaintiffs' inadequate warning devices claim (the "dangerous trap" motion) [Clerk's doc. # 48] is **DENIED;**

Defendants' motion for partial summary judgment as to Plaintiffs' inadequate warning devices and excessive train speed claims (federal preemption based on use of federal funds and train speed) [Clerk's doc. # 49] is **GRANTED IN PART** (as to the excessive speed claim) and **DENIED IN PART** (as to the inadequate warning device/federal funds preemption issue); and the accompanying supplemental motion for partial summary judgment on the inadequate warning device claims/federal funds issue [Clerk's doc. # 80] is **DENIED;**

Defendants motion to dismiss the Plaintiffs' claims for punitive damages under Federal Rule of Civil Procedure 12(b)(6) [Clerk's doc. # 50] is **GRANTED;** and

Defendants' motion for summary judgment regarding allegations of inadequate training of the locomotive engineer [Clerk's doc. # 51] is **GRANTED.**

### *REPORT AND RECOMMENDATION ON DISPOSITIVE MOTIONS*

KEITH F. GIBLIN, United States Magistrate Judge.

Pursuant to 28 U.S.C. § 636(b)(1)(A) and the Local Rules for the United States District Court, Eastern District of Texas, Appendix B, the District Court referred this matter to the undersigned United States Magistrate Judge for consideration of and recommended disposition on pretrial matters and proceedings. Pending before the Court for purposes of this report are several case-dispositive motions filed by the Defendants.

Those motions are:

-Defendants' motion for partial summary judgment regarding the railroad's duty to maintain the crossing [Clerk's doc. # 45];

-Defendants' motion for summary judgment regarding Plaintiffs' survival action [Clerk's doc. # 46];

-Defendants' motion for partial summary judgment regarding federal preemption under the Boiler Inspection Act of claims related to the adequacy of warning devices [Clerk's doc. # 47];

-Defendants' motion for partial summary judgment as to the Plaintiffs' inadequate warning devices claim (the "dangerous trap" motion) [Clerk's doc. # 48];

-Defendants' motion for partial summary judgment as to Plaintiffs' inadequate warning devices and excessive train speed claims (federal preemption based on use of federal funds and train speed) [Clerk's doc. # 49] and the accompanying supplemental motion for partial summary judgment on the same issues [Clerk's doc. # 80];

-Defendants' motion to dismiss the Plaintiffs' claims for punitive damages under Federal Rule of Civil Procedure 12(b)(6) [Clerk's doc. # 50]; and

-Defendants' motion for summary judgment regarding allegations of inadequate training of the locomotive engineer [Clerk's doc. # 51].[1]

### *BACKGROUND*

#### A. Plaintiffs' Claims

The Plaintiffs filed this civil action based upon events occurring on or about the morning of December 29, 2006, when an Amtrak train traveling on a Union Pacific

---

1. The Defendants requested a hearing before the Court for the purposes of arguing the issues presented in their dispositive motions. The undersigned's procedure is to set hearings at the Court's discretion. At this time, the Court finds a hearing unnecessary for purposes of considering Defendants' motions because the numerous issues have been briefed thoroughly and adequately and the Court can rule on the pending motions based upon the briefs and documents submitted by the parties.

track struck Larry Gauthier's vehicle at the "Eddy Street crossing" in Vinton, Louisiana. The impact of the train killed Larry Gauthier. The Plaintiffs are all family members of Mr. Gauthier and filed their claims sounding in allegations of wrongful death, negligence and gross negligence either individually or on behalf of Mr. Gauthier's estate. The Plaintiffs filed suit against Defendant Union Pacific and the other Defendants, Andrew Granger, Brent Waguespack, Ken Rouse, Jack Mann, all alleged to be employees of Union Pacific in the *First Amended Complaint,* and National Railroad Passenger Corporation, doing business as Amtrak.

The Plaintiffs allege that the crossing had previously been closed and reopened and that, upon reopening, the crossing had no or very little warning to vehicle traffic. The Plaintiffs further contend that the Defendants had a duty to make the crossing safe or close it, but they failed to close it or provide adequate warning at the crossing. Throughout the case, Plaintiffs have argued that there has been a history of accidents and problems at the Eddy Street crossing.

Based upon these factual allegations, the Plaintiffs have asserted causes of action for wrongful death, negligence, and gross negligence. They state that they assert these claims under the common law of Texas, and that they are specifically "not pleading any claims preempted under the holdings set forth in *Norfolk v. Shanklin, CSX Transportaion v. Easterwood,* or those cases' progeny." *See First Amended Complaint,* at p. 2. The Plaintiffs' tort claims are based on the allegations that Defendants were negligent and grossly negligent for:

a.  failing to keep a proper lookout;

b.  failing to properly sound the train's whistle, siren, or horn;

c.  failing to proper maintain an adequate, unobstructed sight distance at its crossings;

d.  failing to slow and/or stop the train in order to avoid a specific individual hazard;

e.  failing to install a crossing guard;

f.  failing to use any means of active warning for approaching traffic;

g.  failing to perform inspections and testing of warning systems;

h.  failing to properly train employees;

i.  failing to properly inspect the track and take reasonable precautions to prevent individuals from placing themselves in harm's way;

j.  exceeding the speed limit; and

k.  failing to perform any studies, inspection, or analysis into the problems at the crossing.

### B. Motions for Summary Judgment and Corresponding Briefs

At the outset, the Court notes that in the Plaintiffs' briefs, they represent that they do not oppose the Court granting a handful of the Defendants' motions. *See Plaintiffs' Sur–Reply in Further Support of Their Response to Defendants' Various Summary Judgment Motions* [Clerk's doc. # 105]. Specifically, the Plaintiffs do not oppose the granting of the motion for partial summary judgment regarding the allegations of inadequate training of the locomotive engineer [Clerk's doc. # 51]; the motion for partial summary judgment regarding the survival action [Clerk's doc. # 46]; and the motion for partial summary judgment regarding the preemption of claims related to the adequacy of warning devices on the locomotive [Clerk's doc. # 47], subject to the Plaintiffs' contention that evidence relating to the horn's audibility and train speed are relevant to Plaintiffs' negligence claims and the determina-

tion of whether the Eddy Street crossing needed improved warning devices.[2] Accordingly, the Court will not analyze those three motions based on the Plaintiffs' representation that they are not in dispute. The Court will accordingly recommend that those motions be granted based upon the Plaintiffs' statements regarding their lack of oppositions and the caveat related to any evidence relevant to their negligence claims.

As for the remaining disputed summary judgment motions, for the sake of streamlining the analysis, the Court will categorize those motions based upon the issues presented, as discussed below.

### 1) Motions Relating to Issues of Federal Preemption

In the federal preemption motions [Clerk's doc. # 49, 80], the Defendants contend that the Plaintiffs' tort claims based upon inadequate warning devices and excessive train speed allegations should be dismissed as a matter of law based on federal preemption. Specifically, the Defendants argue that "indisputable evidence" establishes that federal funds were used to install warning devices at the crossing prior to the accident in question and, accordingly, the tort claims related to failure to install warning devices are preempted under federal law. Secondly, the motion contends that summary judgment evidence establishes that the train at issue in the subject accident was traveling at a rate of speed less than the federally mandated speed limit and accordingly, because the train was traveling in accordance with the speed limits set by federal regulations, the Plaintiffs' claims should be preempted under federal law insofar as

they are arguing that the train was traveling at an excess speed.

Plaintiffs respond in opposition by contending that their tort claims are not preempted for a number of reasons. They specifically argue that the Preemption Clarification—a subpart to the Federal Railroad Safety Act (FRSA) passed by Congress in 2007—has changed federal preemption law applicable to the railroad accident at issue here by carving out state law claims seeking damages for personal injury, death, or property damage from the preemption scheme of the FRSA. The Plaintiffs also contend that the evidence shows that federal funds were not spent on the warning devices at Eddy Street, and under the applicable case law, Defendants cannot conclusively prove that federal funds were in fact used on the warning devices at the Eddy Street crossing for purposes of summary judgment. For the sake of argument, Plaintiffs further respond that even if the Court concluded that the Preemption Clarification did not remove the Plaintiffs' claims from federal preemption, this case falls within a preemption exception insofar as the Defendants have allegedly not complied with federal standards or Union Pacific's own internal standards. See Plaintiffs 'Response to Defendants' Various Motions for Summary Judgment [Clerk's doc. # 90], at pp. 29–31.

Defendants replied to Plaintiffs' response on this issue, and also offered supplemental authority on the preemption arguments. They re-urge their arguments on federal funding, contending that "participation" in the federal funds is the key. See Defendants' Reply Brief, at p. 3. They

---

**2.** The Plaintiffs also represent that they do not intend to submit individual negligence questions to the jury on the specific issues presented in that motion for summary judgment [Clerk's doc. # 47]. See Plaintiffs' Response to Defendants' Various Motions for Summary

Judgment [Clerk's doc. # 90]. Instead, it appears that the Plaintiffs are arguing that they are not claiming those issues specifically, but the related evidence would be relative to their claims of negligence as a whole.

also argue that the Preemption Clarification did not overturn relevant case law and the amendment was a clarification that did not change the substance of the preemption analysis. *Id.* at p. 13. They further take issue with the Plaintiffs' argument regarding non-compliance as an exception to preemption. *Id.* at pp. 18. Finally, with the recently filed supplemental authority, they cite a recently published Department of Transportation rule that they contend supports their position that the Preemption Clarification does not remove the Plaintiffs' claims in this case from federal preemption. *See Defendants' Supplemental Brief/Authority on the Law of Federal Preemption* [Clerk's doc. # 110].

### 2) Motions Relating to Defendants' Duties Under State Law

In the motion for partial summary judgment regarding the railroad's duty to maintain the railroad crossing [Clerk's doc. # 45], the Defendants argue that pursuant to Louisiana law, they are only responsible to construct and maintain the area of Eddy Street that lies between and two feet outside the rails. Accordingly, they argue that they are entitled to partial summary judgment on the issue of their duty to maintain the crossing to the extent that the Plaintiffs are arguing that the Eddy Street approaches to the crossing were too steeply sloped or not adequately maintained. The Defendants contend that they are not responsible for the construction or maintenance of Eddy Street other than the area between the rails and the two feet outside the rails pursuant to the Louisiana Revised Statutes, Section 45:323.

Defendants relatedly argue in their motion for partial summary judgment as to inadequate warning devices claim ("dangerous trap claims") [Clerk's doc. # 48] that Louisiana law should be applied, and under Louisiana law, the Eddy Street crossing is not a "dangerous trap." Defendants further contend that under Louisi-

ana law, there exists no duty to install additional warning devices at the subject crossing because it was not "dangerous trap." Therefore, they argue that summary judgment must be granted in favor of the Defendants on the Plaintiffs' negligence claims to the extent that the Defendants did not owe a duty to install additional safety devices because the particular crossing at issue is not a "dangerous trap" under Louisiana law.

Plaintiffs first respond to the "dangerous trap" motion by first arguing that the Court should apply Texas law. They reach this conclusion by arguing that under the Texas choice of law analysis, Texas law should be applied because Texas tort law relating to "ultrahazardous" and "dangerous trap crossings" does not conflict with Louisiana law on the same theories of liability. *See Plaintiffs' Response,* at pp. 33–34.

Plaintiffs also contend that even if the Court applies Louisiana law, both the "dangerous trap" motion and the statutory motion relating to the warning devices should be denied. In their response, citing case law and Louisiana Revised Statute Section 32:169, Plaintiffs argue that railroads have duties to install lights and gates at a crossing under three distinct circumstances, and those circumstances supercede the limited duties owed by the railroad to the public under Section 45:323. Plaintiffs go on to discuss two of these duties, citing evidence that they contend creates issues of fact on each of the duties allegedly owed by Defendant Union Pacific. *See Response,* at pp. 36–37. Plaintiffs conclude that the Eddy Street crossing presents both a dangerous trap and a "unique and local safety hazard," and, accordingly, there is evidence to preclude summary judgment on these issues.

In the Defendants' reply, they re-iterate their argument that Louisiana law applies to the Plaintiffs' claims, and under Louisi-

ana law, the Eddy Street crossing was not a "dangerous trap." They further contend that the "unique and local safety hazard" is not a separate legal analysis under the relevant case law. The Plaintiffs address this case in their sur-reply as well. *See Plaintiffs' Sur–Reply,* at pp. 5–6.

### C. Motion to Dismiss Claim for Punitive Damages

The Defendants have also requested that the Court dismiss Plaintiffs' claims for punitive damages pursuant to Federal Rule of Civil Procedure 12(b)(6). In support, they argue that Louisiana law should apply to the Plaintiffs' claim, and under Louisiana law, the Plaintiffs are not entitled to claim for punitive damages because such damages are not allowed unless expressly authorized by statute, and the Plaintiffs have not cited any statute authorizing punitive damages for their claims as alleged.

Plaintiffs respond by arguing that punitive damages are recoverable, both under Texas and Louisiana law. *See Response,* at pp. 44–46. Referencing Louisiana statutory law on punitive damages and the accompanying comments, they argue that the appropriate conflict of law analysis leads to the application of Nebraska, Delaware and Texas law on the issue of punitives because the tortfeasor, Union Pacific, employs policies and procedures which emanated from those states. Although Nebraska does not allow for punitive damages, Plaintiffs contend that Texas and Delaware law do, so they should be allowed to claim for punitives under their proposed analysis yielding the application of those laws.

### DISCUSSION

### A. General Summary Judgment Standard

■ Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This rule places the initial burden on the moving party to identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Rule 56(c)); *Stults v. Conoco, Inc.,* 76 F.3d 651, 655–56 (5th Cir.1996) (citations omitted). The movant's burden is only to point out the absence of evidence supporting the nonmovant's case. *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir.1992). When the moving party has carried its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party bears the burden of coming forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In considering a motion for summary judgment, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, the non-movant may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial. *Webb v. Cardiothoracic Surgery Assocs. of North Texas, P.A.,* 139 F.3d 532, 536 (5th Cir. 1998). The Court must consider all of the evidence but refrain from making any credibility determinations or weighing the evidence. *See Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted.)

■ An issue is genuine if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 255–56, 106 S.Ct. 2505. The admissibility of evidence is subject to the same standards and rules that govern the admissibility of evidence at trial. *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 650 n. 3 (5th Cir.1992).

Local court rules also govern consideration of motions for summary judgment. Local Rule CV–56(b) states:

> Any response to a motion for summary judgment must include (1) any response to the statement of issues; and (2) any response to the "Statement of Undisputed Material Facts." The response should be supported by appropriate citations to proper summary judgment evidence as set forth below [in Local Rule CV–56(d)]. Proper summary judgment evidence should be attached to the response in accordance with the procedure contained in section (d) of this rule.

## B. Federal Preemption of Plaintiff's Claims

### 1) Applicable Law

■ It is well-established law that under the Supremacy Clause of the United States Constitution, Congress possesses the power to preempt state law and that a federal agency, acting within the scope of its congressionally delegated authority, may also preempt state law. *See La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 369, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986). The Federal Railroad Safety Act (FSRA) was enacted in 1970 to promote safety in every area of railroad operations and to reduce railroad-related accidents and incidents. 49 U.S.C. § 20101. The FRSA grants the Secretary of Transportation the authority to prescribe regulations and issue orders for every area of railroad safety. 49 U.S.C. § 20103(a). The Court accordingly turns to the relevant preemption statute, Section 20106 of the FRSA, which provides:

(a) National uniformity of regulation.

(1) Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable.

(2) A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order—

> (A) is necessary to eliminate or reduce an essentially local safety or security hazard;

> (B) is not incompatible with a law, regulation, or order of the United States Government; and

> (C) does not unreasonably burden interstate commerce.

(b) Clarification regarding State law causes of action.

(1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party—

> (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters),

covering the subject matter as provided in subsection (a) of this section; (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

(2) This subsection shall apply to all pending State law causes of action arising from events or activities occurring on or after January 18, 2002.

■ 49 U.S.C. § 20106. On August 3, 2007, Congress enacted the Implementing Regulations of the 9/11 Commission Act of 2007, Pub.L. 110–53, 121 Stat. 266. Among other things, the 2007 legislation amended 49 U.S.C. § 20106. *See Van Buren v. Burlington Northern Santa Fe Ry. Co.*, 544 F.Supp.2d 867, 875–76 (D.Neb. 2008). It retained the text of the prior version of the statute but redesignated it as subsection (a). It also added new subsections (b) and (c). Pub.L. 110–53, Title VI, § 1528 (August 3, 2007). Section 20106 was not amended to eliminate preemption of federal claims, but rather to rectify a situation in which two federal courts, both of which decided cases arising from the same train derailment accident occurring at Minot, North Dakota on January 18, 2002, concluded that a railroad's violation of federal standards of care was not relevant to a preemption analysis. *Van Buren*, at 876 (citing H.R.Rep. No. 110–259, at 351 (2007) (Conf.Rep.) U.S.Code Cong. & Admin.News 2007, at 119, 183). Those cases are *Mehl v. Canadian Pac. Ry.*, 417 F.Supp.2d 1104 (D.N.D. 2006) and *Lundeen v. Canadian Pac. Ry.*, 507 F.Supp.2d 1006 (D.Minn.2007). *Id.* Congress responded by clarifying that a state law cause of action is not preempted when it is based on an allegation that a party failed to comply with a federal standard of care established by regulation or

failed to comply with its own plan, rule or standard created pursuant to a federal regulation. *Id.*

After the amendment of Section 20106(b), the familiar preemption analysis of *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000), and their progeny is applied to allegations of state law negligence, *unless:* (1) the negligence involves a railroad's *failure* to comply with a federal standard of care and section 20106(b)(1)(A) applies or (2) the negligence involves a railroad's failure to comply with its own plan, rule, or standard created pursuant to a federal regulation and section 20106(b)(1)(B) applies. *Van Buren*, at 876. Section 20106(b)(1)(C), which provides that "[n]othing in this section shall be construed to preempt" a State law action alleging that a party has "failed to comply with a State law, regulation, or order *that is not* incompatible with subsection (a)(2)," merely restates the general preemption rule and the exception found within section 20106(a)(2). *Id.*

■ Generally, state law negligence claims are preempted by what is now Section 20106(a) if federal regulations "cover" the same subject matter, which requires that the federal regulations "substantially subsume" the subject matter of the relevant state law. *Id.* Citing *Easterwood*, 507 U.S. at 664, 113 S.Ct. 1732, *Shanklin*, 529 U.S. at 357–58, 120 S.Ct. 1467.

As discussed in detail above, the parties clearly dispute the application of the Clarification Preemption in this case. As the Clarification was passed less than two years ago, the issue is a relatively new one and there are only a handful of federal cases to date commenting on this new provision. *See, e.g., Murrell v. Union Pacific R.R. Co.*, 544 F.Supp.2d 1138, 1145

(D.Ore.2008) (discussing the relatively small number of courts addressing the issue to date).

After a detailed discussion, in *Murrell,* United States District Judge Ann Aiken concluded that the Preemption Clarification reaffirmed state law preemption unless one of the exceptions named in subsection (a)(2) applies. *Id.* at 1147. The *Murrell* decision further holds that the Clarification does not explicitly overrule the Supreme Court's decisions in *Easterwood* and *Shanklin.* *Id.* at 1148. Judge Aiken concluded that the amendment to Section 20106 did limit some state law tort claims from being preempted by federal law, specifically when a party has failed to comply with a federal standard of care established by a federal regulation or order or when it has failed to comply with its own plan, rule or standard. *Id. See also* 49 U.S.C. § 20106(b)(1). In applying this reasoning to the facts at hand, Judge Aiken and other courts have then gone on to consider the plaintiffs' negligence claims on a claim by claim basis, analyzing whether they are preempted under Section 20106 or if they fall into one of the exceptions under the Clarification Preemption. *See Murrell,* at pp. 1148–1156; *see also Van Buren,* 544 F.Supp.2d at 876–881.

The Court found that two United States Courts of Appeals have considered the Preemption Clarification to date, and those decisions are referenced by the parties in their briefs. In *Henning v. Union Pacific Railroad Co.,* the Tenth Circuit reached a conclusion similar to that in the District Court cases referenced above, stating that "when a party alleges a railway failed to comply with a federal standard of care established by regulation or with its own plan, rule, or standard created pursuant to a federal regulation, preemption will not apply." *Henning,* 530 F.3d 1206, 1215 (10th Cir.2008). The *Henning* panel also determined that "[h]ad Congress sought to overrule *Shanklin* and *Easterwood,* it would have done so in express terms." *Id.* at 1216.

In *Lundeen v. Canadian Pacific Railway Co.,* the Eighth Circuit also discussed the Preemption Clarification, on appeal of one of the very cases that Congress cited as its impetus for passing the amendment. *Lundeen,* 532 F.3d 682 (8th Cir.2008) (*Lundeen II* ), *rehearing denied by Lundeen v. Canadian Pac. Ry. Co.,* 550 F.3d 747 (8th Cir.2008). However, the *Lundeen* panel did not discuss the application of the provision to the case but rather analyzed the constitutionality of Congress' amendment to Section 20106.[3] The Eighth Circuit concluded that the amendment was in fact constitutional and remanded the case to the District Court for remand to the state court. *Id.* at 691–92.

Having laid out the relevant case law and determined the analysis that the Court finds appropriate in light of Section 20106 and the recent clarification, the Court now turns to Plaintiffs' claims in this case to determine whether any of them are saved from preemption by the exceptions listed in subsection (b)(1) of the statute.

### 2) Analysis

The Defendants' preemption motions focus on the following specific claims assert-

---

**3.** In their Response, the Plaintiffs cite the *Lundeen* opinion for the proposition that the Preemption Clarification had transformed the law and that "state law causes of action are no longer preempted under § 20106." The Court does not disagree with the dicta cited by Plaintiffs, but notes that the *Lundeen* panel made these statements regarding the Preemp-

tion Clarification in the course of its due process analysis of the constitutionality of the statute itself. The *Lundeen* opinion does not specify how the Clarification would apply specifically on a case by case basis, which is the kind of direction the Court needs in this instance.

ed by Plaintiffs: negligence based upon inadequate warning devices because federal funds were used to install the warning devices, and a tort claim based on excessive train speed. *See Motion and Supplement Motion,* [Clerk's doc. # 49, # 80]. The Court will focus on those two aspects of the Plaintiffs' negligence claims. Further, based upon the Plaintiffs' pleading and the agreed disposition on some of the other motions for partial summary judgment, the Court notes that these two allegations—excessive train speed and inadequate warning devices—are not the only remaining allegations of negligence. *See First Amended Complaint,* at pp. 4–5. Utilizing the analysis employed by the courts in *Murrell, Van Buren* and *Henning,* the Court will consider whether the inadequate warning or excessive train speed claims are preempted by the FRSA.

### Inadequate Warning Devices

■ Defendants cite 23 C.F.R. § 646.214(b) for the proposition that the Plaintiffs' state law claims for failure to maintain adequate warning devices at the railroad crossing because federal funds were allegedly used to improve the crossing at issue. Regulation 646.214 was promulgated under the regulatory authority granted by the FRSA. The argument is that once a state installs warning devices at a grade crossing using federal funds, these type of regulations governing warning devices establish a federal standard for the adequacy of those devices which preempts state tort law on the same subject. *See Murrell,* 544 F.Supp.2d at 1152 (citing *Shanklin,* 529 U.S. at 352, 120 S.Ct. 1467), *see also Shanklin,* at 357, 120 S.Ct. 1467.

In the motions and briefs, the Defendants cite summary judgment evidence showing that in 1996, the Louisiana Department of Transportation and Development (DOTD) directed Union Pacific to close the Eddy Street crossing as part of a federally funded project to install lights and gates at the nearby Horridge Street crossing. *See Exhibit B to Motion for Summary Judgment* [Clerk's doc. # 49], Affidavit of Peterson. However, the DOTD later directed Union Pacific to reopen the Eddy Street crossing because the city of Vinton would not agree to a permanent closure of that crossing. *Id.* The DOTD further ordered that as part of the reopening of the Eddy Street crossing, railroad crossbuck signs and stop signs should be installed, and that the costs associated with the reopening, including the installation of those warning devices, be charged to the federally funded Horridge Street project. *Id.* The documents attached to Mr. Peterson's affidavit confirm this information. Having considered this evidence as to the federal funding which lead to the installation of the crossbucks at Eddy Street, the Court turns to any contradictory evidence offered by Plaintiffs.

Plaintiffs argue that the Defendants have not proven that the federal funds "participated" in the installation of the warning devices at the Eddy Street crossing at the time of the accident. The Plaintiffs produced internal Union Pacific emails which indicate that at the time of an earlier fatal accident (the Cezar accident) at the crossing in 2005, the crossbucks in place were not installed using federal funds. *See Exhibit O to Plaintiffs' Response.* Those emails further show that the crossbucks in place in 2005 were not installed using federal funds, and had been replaced approximately eighteen to twenty-four months before the Cezar accident. *Id.* The emails state that the crossbucks that were replaced may have been installed using federal funds. *Id.* They also introduce deposition testimony in support of these factual statements. *See Plaintiffs 'Response, atpp. 21–22; and Exhibits C and P to Response; Deposition of Paul*

*Rathberger and Testimony of Archie Burnham.*

This information at least creates a fact issue as to whether the 1997 federally funded crossbucks *installed* at Eddy Street were replaced by crossbucks that were not installed using federal funds, all before the accident at issue here. The Defendants do reply with more detailed evidence about the federal funds expended to reopen the Eddy Street crossing in 1997, but there is no evidence contradicting the facts that Plaintiffs have adduced suggesting that the crossbucks in place at the time Mr. Gauthier was killed were not installed with federal funds. The Court cannot conclude as a matter of law that 23 C.F.R. § 646.214 clearly applies and the inadequate warning device claims are thus preempted. There is a dispute as to the expenditure of federal funds, and the Court concludes a genuine issue of material fact exists on this preemption issue.

### Excessive Train Speed

▪ The Defendants argue that pursuant to 49 C.F.R. § 213.9, the Plaintiffs allegations of excessive train speed should be preempted because the subject passenger train in this case was traveling at a speed less than the maximum speed allowed under Section 213.9. Under 49 C.F.R. § 213.9, the maximum speed allowable for a passenger train traveling on a Class V track is 90 mph. *Id.* The testimony of Mark Belton, the train engineer, indicates that the train was operating at a speed of 78 mph on a Class V track just prior to the accident when he applied the train's emergency brakes. *See Defendants' Motion [Clerk's doc. # 49], Exhibit C, Affidavit of Mark Belton; see also Exhibit A, Affidavit of Charles Rainwater (Manager of Track Maintenance).* Based upon this evidence, Union Pacific also argues that the train was also operating within the speed limits set by the Union Pacific Timetable speed limit. Accordingly, they contend that they were operating within their own internal speed regulation and Plaintiffs' excessive speed claim should also be preempted in this regard.

The Court has reviewed the Plaintiffs response and the remainder of the parties' briefs and cannot find any other evidence on the issue of the excessive speed allegations. It follows that, as a matter of law, Defendants have established that they were not in violation of either the relevant federal regulation regarding speed limit or their own internal rules regarding train speed. Such a violation is required for the Plaintiffs to except their negligence claims based on this theory from federal preemption under 49 U.S.C. § 20106 and the included Preemption Clarification. Defendants accordingly have carried their summary judgment burden in establishing that the Plaintiffs' tort claims based upon excessive train speed are federally preempted. *See e.g. Murrell,* 544 F.Supp.2d at 1150–51 (applying federal regulations and Union Pacific's own speed timetable in reaching preemption conclusion.) Accordingly, this motion for summary judgment should be granted and Plaintiffs' negligence claims based upon excessive train speed should be dismissed. Defendants contend that because the summary judgment evidence shows the train was operating in compliance with the federal regulation governing train speed, the Plaintiffs cannot show that the train was operating at an excessive speed. It follows that the Plaintiffs cannot except their excessive train speed claim from preemption under the Clarification because they cannot show that the Defendants were not in compliance with federal regulations as discussed under Title 49, United States Code, Section 20106(b)(1)(B).

### C. Motions for Summary Judgment Based on Defendants' Duties Under State Law

### 1) Which State's Law Applies?[4]

In diversity cases, federal courts must apply state substantive law. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir.2007); *see also Rosenberg v. Celotex Corp.*, 767 F.2d 197, 199 (5th Cir.1985) (under the Erie doctrine, a federal court sitting in diversity must apply the substantive law of the forum state and federal procedural law) (citing *Hanna v. Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). State substantive law includes a state's conflict of laws rules. *Rosenberg*, at 199 (citing *Klaxon v. Stentor Electric Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Thus, in diversity cases, federal courts are obliged to apply the choice of law rules of the forum state. *Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 230 (5th Cir. 2005) *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 (5th Cir.2000) (citing *Klaxon*, 313 U.S. at 496, 61 S.Ct. 1020). As Texas is the forum state in this matter, the court will apply Texas choice of law rules.

Texas courts employ the ALI Restatement (Second) of Conflicts "most significant relationship test" for all civil choice of law cases except those contract cases in which the parties have agreed to a valid choice of law clause. *Spence*, at 311 (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex.1984)); *see also Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex.1979); *Crisman v. Cooper Indus.*, 748 S.W.2d 273, 276 (Tex.App.-Dallas 1988, writ denied). Section 6 of the Restatement contains the general principles involved in the conflicts analysis whereas Restatement Section 145 lists the factual matters to be considered when applying the Section 6 principles to a given case.

*Perez v. Lockheed Corp. (In re Air Disaster at Ramstein Air Base)*, 81 F.3d 570, 577 (5th Cir.1996). These factual matters are determinative as to which state has the most significant relationship with the case.

Under the "most significant relationship test," courts consider: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship between the parties, if any, is centered. RESTATEMENT (SECOND) OF CONFLICTS § 145(2); *Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 704 (5th Cir.1999). Texas requires that this choice of law determination be done on an issue by issue basis. *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 311 n. 6 (5th Cir.2000) (citing *Duncan*, 665 S.W.2d at 421). It is not the number of contacts, but the qualitative nature of those contacts that controls. *Deep Marine Tech. v. Conmaco/Rector, L.P.*, 515 F.Supp.2d 760, 769 (S.D.Tex.2007) (citing *Jackson v. W. Telemktg. Corp. Outbound*, 245 F.3d 518, 523 (5th Cir.2001); *Scottsdale Ins. Co. v. Nat'l Emergency Servs., Inc.*, 175 S.W.3d 284, 291 (Tex.App.-Houston [1st Dist.] 2004, pet. denied)).

The parties agree with application of the "most significant relationship" test in their briefs but they disagree with the outcome upon its application to the facts of this matter. The Defendants argue for the application of Louisiana law, while the Plaintiffs contend that Texas law should apply because the laws of Texas and Louisiana do not conflict. The Court disagrees with Plaintiffs analysis on this point and finds that an application of the "most sig-

---

**4.** The parties' briefs follow similar analysis on the choice of law issue, but reach differing results. All parties agree that the Court applies the forum state, Texas' choice of law provisions to determine which substantive law applies, as discussed herein.

nificant relationship" test yields the result that Louisiana law should govern the Plaintiffs' common law claims.

The "most significant relationship" factors under Section 145 of the Restatement apply to the facts of this case as follows:

(1) Place of injury.

It is undisputed that the accident in question, resulting in Mr. Gauthier's death, occurred in Vinton, Louisiana.

(2) The place where the conduct causing the injury occurred.

Neither party addresses this factor at length in their briefs, but it can be argued that the allegedly tortious conduct at issue in Louisiana or in various locations, possibly Texas and Nebraska, where Union Pacific conducts business or makes decisions governing the Eddy Street crossing. The fact the Eddy Street crossing is located in Louisiana is key, but this factor is not particularly determinative on this issue.

(3) The domicile, residence, nationality, place of incorporation and place of business of the parties.

The evidence and pleadings show that three of the Plaintiffs reside in Louisiana and one resides in Kansas. As for Defendants, the briefs reflect that Defendant Union Pacific is incorporated in Delaware and maintains its principal place of business is in Nebraska. Defendants Brent Waguespack, Jack Mann, Paul Rathberger, and Ken Rouse, all reportedly reside in Texas

(4) The place where the relationship, if any, between the parties is centered.

There is no relationship between the parties other than the fact that the accident at issue occurred at the Eddy Street crossing in Vinton.

As illustrated above, the majority of the Plaintiffs reside in Louisiana and the accident occurred in Louisiana. The Court further notes that other issues, including the City of Vinton's involvement with the Eddy Street crossing and Union Pacific's history with the Eddy Street crossing (which the Plaintiffs emphasize as part of their case), put the crossing, located in Louisiana, at the center of the case. The only relationship the case has with Texas is the fact that Union Pacific also conducts business there and that a number of the individual Defendants—all notably Union Pacific employees—are reportedly located in Texas. All key elements of the Plaintiffs' allegations center around the Eddy Street crossing. Furthermore, in comparing at the relevant substantive statutes and case law from Louisiana and Texas, the Court is unpersuaded by Plaintiffs' argument that Louisiana and Texas law on the relevant issues regarding the Defendants' duties related to the crossing are nearly identical. Consequently, Louisiana has the "most significant relationship" with the case under the Texas choice of law analysis and the Court concludes that Louisiana substantive law applies.

### 2) Application

■ Louisiana courts employ a duty-risk analysis to weigh a plaintiff's negligence claim. *Long v. State ex rel. Dept. of Transp. and Development,* 916 So.2d 87, 101 (La.2005) (citation omitted). Under the duty-risk analysis, the plaintiff must establish five elements: (1) proof that the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) proof that the defendant's conduct failed to conform to the appropriate standard (the breach element); (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection

element); and (5) proof of actual damages (the damages element). *Id.*

Specific to this case, the Court will focus on whether the Defendants owed a duty to Plaintiffs because the motions for summary judgment center around this issue. As explained above, Defendants contend that pursuant to Louisiana Revised Statute 45:323, they do not owe a duty to the Plaintiffs insofar as that statute limits their liability on the Eddy Street crossing to the area in between the rails and two feet outside of the rails. They further contend that the summary judgment evidence shows that the Eddy Street crossing was not a dangerous trap under Louisiana law, so they do not owe the Plaintiffs a duty to install additional warning devices at the crossing.

La. R.S. 45:323 provides, in relevant part, that "all railroads, except those owned and operated by a political corporation, railways and street railway companies in any subdivision of the state, whose tracks are laid on or across the public street of any municipality, shall keep in good condition and suitable for vehicular traffic that portion of the street lying between the rails of the tracks of such railroad and railways." The Defendants accordingly argue that they owed no duty to maintain the Eddy Street crossing outside of this specific area, citing two cases in support, *Dehart v. Burlington Northern & Santa Fe Ry. Co.*, 860 So.2d 248 (La.Ct. App. 5th Cir.2003) and *Succession of Theriot v. Southern Pac. Transp. Co.*, 560 So.2d 861 (La.Ct.App. 3rd Cir.1990).

In its research, the Court found very little case law applying Section 45:323. The few key cases do indicate that La. R.S. 45:323 imposes a strict responsibility upon railroads to maintain for safe traffic any crossings of municipal streets. *Shaffer v. Ill. Central Gulf R.R. Co.*, 479 So.2d 927, 930 (La.Ct.App. 1st Cir.1985) (citing *Bardfield v. New Orleans Public Belt*

*R.R.*, 371 So.2d 783, 785–86 (La.1979)). Accordingly, Section 45:323 places a statutory duty on the railroad. *Id.* at 931. However, the Court did not find and has not been cited any authority suggesting that this is the only duty owed by the railroad regarding its crossings under Louisiana law. In fact, to conclude that the only duty owed by the railroad regarding maintenance of the crossing is the strict liability under the "two feet" rule imposed by Section 45:323 would be in direct conflict with the other statutes and common law, including the other portions of the Revised Statutes and Civil Code and the tortious "dangerous trap" doctrine discussed herein.

Reading the cases cited by Defendant, the Court finds that they do not preclude a finding otherwise. Both *Succession of Theriot* and *Dehart* involved cases that were tried to a jury, not decided as a matter of law on summary judgment. In *Dehart*, after detailed consideration of the evidence adduced in that case, the court of appeals found that the jury's verdict of no negligence on the part of the railroad should be upheld. *Dehart*, 860 So.2d at 257. In reaching this conclusion, the court employed the common law duty-risk analysis under Louisiana law and stated that the railroad's duties regarding the crossing include operating the crossing such that it can be safely traversed by motorists using reasonable care. *Id.* at 255, 257. In fact, the railroad admitted that it owed a duty of maintenance, but argued that the duty was not breached. *Id.* at 255. Accordingly, *Dehart* is distinguishable and suggests that other duties are in fact imposed upon the railroad beyond the statutory two feet rule imposed by Section 45:323. The Court found no reference to Section 45:323 in the *Dehart* opinion.

In *Succession of Theriot*, the appellate court was also considering the appeal of a

jury verdict finding no fault on the part of the defendant railroad. *Succession of Theriot,* 560 So.2d at 862. The court stated that the law is clear that the railroad had the duty to erect and maintain a crossbuck at the crossing in accordance with La. R.S. 32:169. *Id.* at 863. The court also discussed the "dangerous trap" rule and the liability that can be imposed by law under that doctrine. *Id.* Based on the evidence presented in the *Theriot* case, the Court concluded that the plaintiffs did not prove the existence of a dangerous trap at trial. *Id.* at 863. In the very next paragraph, the Court considered the duty owed under 45:323 and held that the railroad did not breach its duty to maintain the track. *Id.* In sum, the appellate court applied all the duties at issue in this case—not just the statutory duty to maintain under Section 45:323—to the specific facts in *Theriot* and upheld the jury verdict of no liability on the part of the railroad. Accordingly, the Court does not find *Theriot* determinative on the Defendants' summary judgment argument that they should only be held to the "two feet" duty to maintain the track under La. R.S. 45:323.

In reading these opinions, there is no clear statement suggesting that the "two feet" duty to maintain the crossing is the only duty imposed upon Defendant by Louisiana law. Accordingly, the Court cannot find that the Defendants only owe that duty under Section 45:323 as a matter of law. The Court disagrees with Defendants' contention that the Plaintiffs' claims should be dismissed as they relate to the construction or maintenance of any portion of the roadway outside the area between the rails and for a distance of two feet outside the rails under 45:323. Issues remain on the other duties allegedly owed by Defendants. Summary judgment must therefore be denied on this particular motion.

Louisiana statutory law also requires a railroad to install and maintain crossbucks at public crossings and requires a train to sound its horn at least a quarter of a mile prior to a public crossing that involves a highway. *See* La.Rev.Stat. §§ 32:168–9. Additional warning devices are not required under Louisiana law unless the crossing constitutes a "dangerous trap." *See Burk v. Illinois Cent. Gulf R.R. Co.,* 529 So.2d 515 (La.Ct.App. 1st Cir.1988). The dangerous trap doctrine provides that if a crossing is unusually dangerous because the view of the motorist is so obstructed as to require that he place himself in a position of peril dangerously near the tracks, before he has view of the oncoming train, the railroad will be held liable unless it can show that it took unusual precautions, such as reducing the speed of the train, or increasing its warning devices. *Id. See also Kendrick v. Louisiana and North West R. Co.,* 766 So.2d 705, 714–15 (La.Ct.App. 2d Cir.2000).

The parties argue over the distinctions between the "dangerous trap" and "unique and local safety hazard" liability theories in this situation. The Defendants argue for the application of the dangerous trap liability theory solely, and the Court finds that even if just applying that stricter standard there exists an issue of genuine material fact on whether the Eddy Street crossing presented a "dangerous trap" under Louisiana law, thus creating an issue of fact on whether Defendants owed Plaintiffs a duty.

The Plaintiffs have provided evidence in their summary judgment response indicating that the Eddy Street crossing is a "dangerous trap" under the relevant factors. Mr. Cliff Shoemaker is a former Union Pacific employee. He was the director of industry and public projects for about eleven years there, and as part of his job, he dealt with issues related to railroad grade crossings. *See Exhibit K to*

*Plaintiffs' Response, Shoemaker Deposition* at 9:6–16. He offered testimony in his deposition specifying certain factors that should be used in determining the dangerousness of the crossing. *See id.* at 68:2–70:21. The Plaintiffs' expert on this issue, Archie Burnham, evaluated these factors at the Eddy Street crossing and concluded that the conditions indicated that the crossing is in fact a dangerous trap. *See Exhibit V to Plaintiffs' Response, Burnham Affidavit.* Most notably, he has personally viewed the Eddy Street crossing and stated that buildings and trees in the vicinity of the crossing present a background that can hide the silhouette of the approaching train and make it very difficult to identify. *See Exhibit A to Plaintiffs' Response, Burnham Testimony from Cezar Trial,* at 128:8–22.

Based upon this and other evidence presented with the Plaintiff's brief, the Court concludes that a genuine issue of fact exists on whether the Eddy Street crossing presented a "dangerous trap." This evidence does not clearly establish that the Eddy Street crossing so obstructed the view of Mr. Gauthier as to require that he place himself in a position of peril dangerously near the tracks before he could view the oncoming train, but it does create a conflict in the evidence presented by both parties as to exactly how obstructed the view could have been. Accordingly, the Court finds that summary judgment should be denied on this issue and the issue of whether the crossing was a dangerous trap should be presented to the jury to make that determination based upon the evidence.

### D. Motion to Dismiss Claim for Punitive Damages

### 1) Federal Rule of Civil Procedure 12 Standard for Dismissal

Federal Rule of Civil Procedure 12 provides that a pleader may present, by motion, a defense alleging "failure to state a claim upon which relief can be granted." Fed. R. Civ. P 12(b)(6) (full citation of rule omitted). The Fifth Circuit has stated that a claim should not be dismissed under Rule 12(b)(6) unless the plaintiff would not be entitled to relief under any set of facts or any possible theory he may prove consistent with the allegations in the complaint. *See, e.g., Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir.2004) (quoting *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999)). This standard derived from *Conley v. Gibson,* which stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). But recently in *Bell Atlantic,* the Supreme Court made clear that the Conley rule is not "the minimum standard of adequate pleading to govern a complaint's survival." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1968–69, 167 L.Ed.2d 929 (2007).

Dismissal for failure to state a claim upon which relief may be granted does not require appearance, beyond a doubt, that plaintiff can prove *no set of facts* in support of claim that would entitle him to relief, although once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *See Bell Atlantic Corp.,* 127 S.Ct. at 1969 (abrogating *Conley* ). A cause of action can fail to state a "claim upon which relief can be granted" if, inter alia, it fails to comply with the requirements of Rule 8(a)(2). *See, e.g., Buerger v. Southwestern Bell Tel. Co.,* 982 F.Supp. 1247, 1249–50 (E.D.Tex.1997); *Bank of Abbeville & Trust Co. v. Commonwealth Land Title Ins. Co.,*

844

201 Fed.Appx. 988, 990 (5th Cir.2006) ("a Rule 12(b)(6) motion to dismiss for failure to state a claim may be a proper vehicle to challenge the sufficiency of a pleading under Rule 8").

■ Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" Fed. R.Civ.P. 8(a)(2). The United States Supreme Court has made clear, however, that a plaintiff is obligated to provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.*, 127 S.Ct. at 1964–65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation")). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic*, 127 S.Ct. at 1965. "Rule 8(a)(2) still requires a showing, rather than a blanket assertion, of entitlement to relief without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only fair notice of the nature of the claim, but also grounds on which the claim rests." *Id.* at 1965 n. 3 (internal quotation marks omitted). When the complaint contains inadequate factual allegations, "this basic deficiency should ... be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 1966. "[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed." *Id.* at 1967 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n. 17, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983)).

**2) Application to Plaintiff's Claims**

■ The Court will not revisit its choice of law analysis but incorporates that discussion from above in reaching the conclusion that Louisiana law applies to the Plaintiffs' requested remedy of punitive damages. That remedy stems from their claim for gross negligence, a tortious cause of action that the Court has already determined to be governed by Louisiana substantive law.

■ Courts have noted that Louisiana only allows for punitive or other exemplary damages in certain toxic tort or drunk driving cases. *See Deep Marine Tech.*, 515 F.Supp.2d at 772 (citing *Prairie Producing Co. v. Angelina Hardwood Lumber Co.*, 882 S.W.2d 640, 652 (Tex.App.-Beaumont 1994), *modified on rehearing*, 885 S.W.2d 640 (Tex.App.-Beaumont 1994, writ denied)). More specifically, punitive damages are not allowed under Louisiana law in the absence of a specific statutory provision. *Zaffuto v. City of Hammond*, 308 F.3d 485, 491 (5th Cir.2002) (citing *Fowler v. Western Union Telegraph Co.*, 357 So.2d 1305, 1309 (La.Ct.App. 3d Cir.1978)); *see also Albert v. Farm Bureau Ins., Inc.*, 940 So.2d 620, 622 (La.2006); *Harvey v. Rayne*, No. 08–0699, 2008 WL 5061805, 2008 U.S. Dist. LEXIS 99031 (W.D.La. Nov. 25, 2008) ("it is well settled Louisiana law that punitive damages are not allowed in civil cases unless specifically provided for by statute. In the absence of such a specific statutory provision, only compensatory damages may be recovered.") (citing *International Harvester Credit Corp. v. Seale*, 518 So.2d 1039, 1041 (La.1988)).

In the pleadings, the Plaintiffs do not identify a statutory provision which allows recovery of punitive damages for the state law claims that they are asserting. *See Price v. Louisiana Dept. of Transp. and Development*, 608 So.2d 203, 208 (La.Ct. App. 4th Cir.1992). The Plaintiffs' claims

do not implicate the two specific and limited circumstances where exemplary damages are authorized under Louisiana law. *See Lucarelli v. D V A Renal Healthcare Inc*, No. 08–0406, 2008 WL 5586615, 2008 U.S. Dist. LEXIS 107363 (W.D.La. Oct. 24, 2008) (citing La. Civ.Code art. 2315.4 (exemplary damages may be awarded based upon proof of defendant driving while intoxicated) and art. 2315.7 (exemplary damages may be awarded in certain cases involving criminal sexual activity)).

As discussed, Plaintiffs do contend that Texas law should be applied to their gross negligence claims for the purposes of seeking punitive damages, but the Court has already foreclosed that argument in its choice of law analysis, *supra*. In their briefs, they argue that Louisiana Civil Code article 3546, which governs the Louisiana conflict of law analysis on punitive damages, allows for the application of Texas law because the applicability focuses on the tortfeasor. Article 3546 provides:

> Punitive damages may not be awarded by a court of this state unless authorized:
>
> (1) By the law of the state where the injurious conduct occurred and by either the law of the state where the resulting injury occurred or the law of the place where the person whose conduct caused the injury was domiciled; or
>
> (2) By the law of the state in which the injury occurred and by the law of the state where the person whose conduct caused the injury was domiciled.

However, this is a procedural statute inapplicable to the situation here. *See In re Train Derailment Near Amite*, MDL No. 1531, 2006 WL 644494, 2004 U.S. Dist. LEXIS 1059 (E.D.La. Jan. 26, 2006) (referring to article 3456 as governing the conflict analysis in delictual actions). If this Court were sitting in Louisiana and attempting to determine the appropriate choice of law, the Court would employ article 3546 to determine which state's substantive applies on punitive damages. However, the Court has already engaged in the appropriate choice of law consideration and determined that under Texas law—the law of the forum state—that Louisiana substantive law applies. Louisiana substantive law does not allow for punitive damages on the Plaintiffs' negligence and gross negligence claims. Accordingly, their claims for punitive damages should be dismissed.

## CONCLUSION AND RECOMMENDATION

Based upon the findings and legal reasoning stated in this report, the undersigned United States Magistrate accordingly recommends that the District Court enter an order ruling on the pending dispositive motions as follows:

The Court recommends that the Defendants' motion for partial summary judgment regarding the railroad's duty to maintain the crossing [Clerk's doc. # 45] be **denied;**

Defendants' motion for summary judgment regarding Plaintiffs' survival action [Clerk's doc. # 46] be **granted;**

Defendants' motion for partial summary judgment regarding the federal preemption under the Boiler Inspection Act of claims related to the adequacy of warning devices [Clerk's doc. # 47] be **granted;** subject to the Plaintiffs' introduction of certain related evidence on its other negligence claims;

-Defendants' motion for partial summary judgment as to the Plaintiffs' inadequate warning devices claim (the "dangerous trap" motion) [Clerk's doc. # 48] be **denied;**

-Defendants' motion for partial summary judgment as to Plaintiffs' inadequate warning devices and excessive train speed

claims (federal preemption based on use of federal funds and train speed) [Clerk's doc. # 49] be **granted in part** (as to the excessive speed claim) and **denied in part** (as to the inadequate warning device/federal funds preemption issue); and the accompanying supplemental motion for partial summary judgment on the inadequate warning device claims/federal funds issue [Clerk's doc. # 80] be **denied;**

-Defendants motion to dismiss the Plaintiffs' claims for punitive damages under Federal Rule of Civil Procedure 12(b)(6) [Clerk's doc. # 50] be **granted;** and

-Defendants' motion for summary judgment regarding allegations of inadequate training of the locomotive engineer [Clerk's doc. # 51] be **granted.**

### *OBJECTIONS*

Within ten (10) days after receipt of the magistrate's report, any party may serve and file written objections to the findings of facts, conclusions of law, and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(c). Failure to file written objections to the proposed findings of facts, conclusions of law and recommendations contained within this report within ten (10) days after service shall bar an aggrieved party from *de novo* review by the district judge of the proposed findings, conclusions and recommendations, and from appellate review of factual findings and legal conclusions accepted by the District Court except on grounds of plain error. *Douglass v. United Serv. Auto. Assn.*, 79 F.3d 1415 (5th Cir.1996) (en banc); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72.

**SIGNED this the 10th day of March, 2009.**